RABUN *vs.* RABUN, executrix.

61  647
99  95

1. If a legatee of full age, through ignorance or mistake of his legal rights, consents to be excluded from sharing in a fund about to be distributed by the executrix, his mother, and the distribution is made accordingly, the executrix will be free from any liability to him for money thus, with his express consent, innocently paid to other parties. But as to any balance remaining in the hands of the executrix, the excluded legatee may revoke his consent, and thereupon may sue for and recover such balance, if it does not exceed his due share of the entire fund.

2. When there are several pleas, and the verdict is for the defendant, but fails to show on what plea or pleas it was rendered, the jury should, at the request of either party, be remanded to their room with instructions to comply with section 3560 of the Code.

Administrators and executors.   Estoppel.   Mistake.   Ver-
dict.    Practice in the Superior Court.    Before Judge
POTTLE.   Warren Superior Court.   April Term, 1878.

Thomas R. Rabun brought complaint against Susannah
Rabun, as executrix of Zachariah Rabun, deceased, for
$367.83, besides interest from March 4th, 1873, alleged to
be due him under the will of his father, the testator, from
the proceeds of certain land sold by the defendant.    The
latter pleaded the general issue, a special plea in abatement
of the action, that plaintiff had been advanced, and the
statute of limitations.

The will of the testator, made on January 23d, 1864,
gave his real estate to his wife, the defendant, for life, and
at her death to his children.   The defendant renounced
her life estate in a part of the land, and obtained an order
from the court of ordinary to sell the same for distribution
among the children.   On March 4th, 1873, a sale was made
and the proceeds divided among all the children, except the
plaintiff.   It is for his share that this action is brought.
All the proceeds of the land sold had been paid out by the
defendant except $170.00.   She has still in hand land of
the value of $1,000.00, and personalty to the amount of
$300.00, in all of which she has a life estate.

For further facts, see the opinion of the court.

The jury found for the defendant.   The plaintiff moved
for a new trial upon the following grounds :

1. Because the court erred in refusing to charge the jury
as follows : "If the plaintiff made the declaration in refer-
ence to having no interest, after the land was sold and when
the money was being divided, he is not estopped.   If he
was led to believe by the parties interested that he had no
interest under the will, his silence at the distribution does
not estop him."

2. Because when the jury returned with a general verdict
for the defendant, the court, though then requested by the
plaintiff, refused to require them to return to their room
and specify upon which of the pleas it was rendered.

3. Because the verdict is contrary to evidence, to law, etc.

The judge certifies that the request to charge was made after the conclusion of his charge.

The motion was overruled, and the plaintiff excepted.

W. M. & M. P. REESE; JAMES WHITEHEAD, for plaintiff in error, cited, on estoppel, Code, §3753; 17 *Ga.*, 449; Bigelow on Est., pp. 324, 331, 480, 560, 561; Smith's L. Cases, 751; 40 *Ga.*, 184. As to verdict, Code, §3560. Request in time, 51 *Ga.*, 127.

A. S. MORGAN; C. S. DuBOSE, for defendant.

BLECKLEY, Justice.

The widow of the testator, who was executrix, had, by the will, an estate in the land for her life, with remainder equally to all of the children. Her life estate, as to some of the land, she thought proper to relinquish, and bring that much of the land to sale for the purpose of a present distribution among the children deemed entitled. She testified at the trial that "the reason that I relinquished my life estate and consented to the sale of the land was because Tom Rabun told me he had no interest in the land, and I wanted to give my other children possession." She further testified: "I was present in Mr. Morgan's office when the calculation was made by which the money was afterwards divided between the heirs of Zachariah Rabun. Thomas R. Rabun said at that time that he had no interest in the land, as he had received his part, and told Mr. Morgan to leave him out. It was the general understanding of us all that he had received his part of the land." Hillman Rabun, one of the sons, testified: "I was in Mr. Morgan's office at the time mentioned, and heard Thomas R. Rabun tell Morgan that he had received his part of the land, and to leave him out. We all were acting under the impression that Thomas had received his part of the land and had no

interest under the will." Other witnesses testified to the the same effect. Morgan, who made the calculation by which the proceeds of the sale were distributed, testified : "I had included Thomas R. Rabun ; he said to me to leave him out, that he had received his part of the land. I remarked to him that under the will, all were entitled alike. He replied that he had received his share. I then left him out. The general impression of those present was that Tom had received his share of the land." It seems that Morgan's calculation, with Thomas R. Rabun excluded, was acted upon by the executrix in paying out the proceeds of the land, and it does not appear that she received any notice of his dissent from that calculation until after she had paid out all of the money except $170.00. The reply made to the evidence above quoted is found in the testimony of Thomas R. Rabun, as follows : "I do not remember saying in Mr. Morgan's office that I had received my part of the land. I did not know at that time that the will left me anything. I had never seen the will. My mother (the executrix) and Willis Phillips (the husband of witness' sister) told me that I had no interest under the will. This was the understanding of us all. I thought the will cut me out until Dr. Hubert told me I had an interest, and read me the will. This was after Mr. Morgan had made the calculation." The third item of the will was in these words : "After the death of my wife, I will that all my property be divided equally between all my children, share and share alike." It was in evidence that the testator had, in his lifetime, conveyed to Thomas R. a certain tract of land, with what precise intention is not certain. It must have been to that conveyance that reference was made when it was thought or said that Thomas R. had received his part of the land. The deed bore date in 1859, and the will in 1864.

1. Taking the evidence all together, there is no doubt that Thomas R. consented to be excluded from sharing in the fund, and that all parties acted under a misapprehension of

his legal rights. But he was a mature man, and was deal-· ing with his mother, the executrix. He endeavors to cast upon her some of the responsibility of misleading him, but there is not the slightest evidence that she did not believe what she said, or that she acted otherwise than in good faith. The will was accessible to him, being upon record, and if he had used the slightest diligence, he might have known its provisions. But the strong indications are, that the real error into which he, as well as his mother, fell, was in treating the deed of 1859 as an advancement to be accounted for under the law, notwithstanding the general provisions of the will. He may never have read the will nor heard it read, and may not have known its precise terms, but, doubtless, he had some idea of what was in it. Most probably it was a matter of reasoning with him, as with the rest, that whatever the exact words of the will might be, an equal division of the testator's property among his children would involve an accounting for land which one of them received from him in his lifetime. This would be so generally in a case of intestacy, and they supposed, or may have supposed, that it would equally be so in the case of a will. How else can the idea that Thomas R. had received his share of the land be accounted for? He had received no land after his father's death. That he, as well as the others, had the idea is manifest from the evidence, though he testified that he did not remember expressing it in Mr. Morgan's office. His testimony contains no denial of having said the like to his mother, or of his having prompted Morgan to leave him out of the calculation. Morgan had counted him in for participation in the fund, and only dropped him at his express instance and request. In this state of things, the fund was paid away to the other children, except a remnant of $170.00. That remnant he can recover in the present action, and the jury should have found that much and no more. Of course, it is not too late to correct the mistake in so far as the children themselves are concerned. In dividing among them the balance of the

testator's property, those who have received more than their proportion of this fund can be made to account for the excess; and if there was not a future division to be made, with a reasonable certainty that ample means are thus in reserve to equalize all parties, the excess might be followed and brought back at once.  But the executrix had the consent of Thomas R. for paying out the fund as she did, and is therefore in no fault for having so done.  There is positive evidence that his consent influenced the calculation, and that his interference with the calculation was active and voluntary.  Besides, it was a woman, a mother, on one side, and an adult son on the other.  True, the mother was executrix and the son a legatee ; but, in business matters, it is rather more the duty of a grown son to caution and guide his mother, than of the mother, though she be an executrix, to protect the son against sacrifices which a diligent attention to his own interest would prevent.  A comparison of the facts of the two cases will enable the professional mind to distinguish this case from that of *Davis vs. Bagley*, 40 *Ga.*, 181.

2. As we have seen, the verdict, under the evidence and the law applicable to the case, should have been in favor of the plaintiff for a part of the sum claimed; but were it otherwise, the motion for a new trial should have been granted for error in refusing to remand the jury for the purpose of complying with section 3560 of the Code; the language of which is as follows : "If there are several pleas filed by the defendant, a verdict for the defendant must show upon which of the pleas the verdict is rendered. The jury may render such verdict upon all the pleas if they see proper to do so." This is plain enough ; and though a general verdict for the defendant may suffice where there is no misdirection in the charge of the court, and no request by either party to have the verdict expressly extended to all the pleas or else confined expressly to one or more of them, yet, where it is seen that compliance with the Code has been omitted, and either party requests in due time that

the omission be supplied, it is matter of right to have it supplied. Indeed, without any request on the subject, it would be a correct and safe practice, and much the better practice, for the court, to refuse to receive a verdict which is not express as to the plea or pleas on which it is rendered. In every case where two or more pleas are on the record, the charge of the court ought to apprise the jury of their duty in shaping their verdict in the event of a finding for the defendant; and when the verdict is returned, and the court, on hearing it read, becomes aware that instructions as to the form have been misunderstood or disregarded, the jury should be sent back to make another effort. The Code is peremptory, and the provision is a wise one. No waiver is to be implied where a party or his counsel speaks out in due time; and here the plaintiff made his request on the return and reading of the verdict, and before the jury had been discharged from the case.

Judgment reversed.