RUSK *et al.,* administrators, *v.* HILL, ordinary, for use, *et al.*

1. In computing the ten days within which a bill of exceptions should be served, the Political Code, § 4, par. 8, to the effect that the first or last day should be excluded, is applicable.   It follows that where a bill of exceptions is certified on the 10th day of the month and is served on the 20th day of the same month, such service is within the ten days prescribed.   *Mott* v. *Bruns. Pub. Co.,* 117 *Ga.* 149, disapproved.

2. When there is no merit in either the exceptions of law or the exceptions of fact taken to an auditor's report, a final decree should be entered without

the intervention of a jury; but an error of practice committed in directing a verdict and entering a decree thereon affords no cause for reversing the judgment thus irregularly rendered.

3. Objection to the maintenance of an action, on the ground that there is a misjoinder of parties plaintiff, must be made, if at all, by way of a special demurrer presented in due time.

4. An auditor is without jurisdiction to strike an amendment to pleadings which was allowed by the court before the case was referred to him.

5. Assignments of error based on the ground that an auditor improperly overruled objections urged against the admission of evidence can not be considered unless the evidence objected to be set forth, either literally or in subtance, in the exceptions filed to his report.

6. Letters of administration granted to an applicant therefor without causing a citation to issue in conformity to law are wholly without legal force or effect.

7. It is within the discretion of an auditor to allow leading questions to be propounded to a witness whenever the ends of justice may thus be subserved.

(a) No abuse of such discretion was shown in the present case.

(b) The testimony so elicited was not, for any reason urged before the auditor, inadmissible.

8. When an administrator, without consulting the heirs of his intestate, allows one not an heir to participate with them in the distribution of the assets of the estate he represents, he does so at his peril; and the lawful heirs are not estopped from subsequently calling upon him for a legal accounting and settlement, notwithstanding they may have known of such misapplication of trust funds and raised no objection thereto, if at the time they ignorantly supposed he was properly administering the estate and in no way misled him into the belief that he was acting with their approval and consent.    Such heirs may, however, be held to account for so much of the fruits of the administrator's unlawful disbursement of trust funds as came to them, by way of gift or inheritance, from the person to whom he improperly gave recognition as an heir.

9. There was, in the present case, ample evidence to support a finding in favor of the prevailing party in some amount; and if any error was committed by the auditor in fixing the precise sum which that party was entitled to recover, such error should have been specifically pointed out in the exceptions filed to his report.

Argued.May 7,—Decided June 25, 1903.

Exceptions to auditor's report.    Before Judge Gober.    Cherokee superior court.    August 6, 1902.

*J. P. Brooke*, *W. D. Mills*, and *H. B. Moss*, for plaintiffs in error. *C. D. Phillips*, *P. D. McCleskey*, and *J. Z. Foster*, contra.

Simmons, C. J.    In the year 1882 William J. Rusk, then a resident of Habersham county, died intestate, leaving a large estate. In the following year James E. Rusk was duly appointed and qualified as the administrator of this estate.    He gave a bond, payable to the ordinary of that county and his successors in office, which

was signed by A. J. Nichols and W. W. Berry as sureties. Subsequently the administrator, desiring to have Berry assist him in his duties, procured Berry to apply to the ordinary to be appointed a coadministrator, and on May 7, 1883, the ordinary passed an order granting his application. Berry thenceforth assumed to act in the capacity of a coadministrator, collected assets belonging to the estate, and joined with James E. Rusk in making annual returns to the ordinary. In 1893 James E. Rusk died, leaving the affairs of the estate he represented still unsettled. His two sons, W. H. Rusk and T. J. Rusk, were in the same year appointed administrators on his estate, qualified as such, and received from Berry $628 as the distributive share of their father in the estate left by William J. Rusk, whose heirs at law were: his three sisters, Nancy E., Mary A., and Ellenor J. Rusk; his brother, James E. Rusk; three children of David Rusk, a deceased brother; and seven children of another deceased brother. In the early part of 1900, a suit was instituted in the name of W. D. Hill, ordinary of Habersham county, on the administrator's bond given by James E. Rusk, the purpose of this suit being to compel an accounting with certain heirs and representatives of heirs of William J. Rusk, who were named as usees of the plaintiff. The parties defendant to this action were W. H. and T. J. Rusk, as administrators of James E. Rusk; the sureties on a bond which they had given as such administrators; and W. W. Berry, as surety on the bond sued on. The suit was based on the theory that the appointment of Berry as a coadministrator with James E. Rusk was a nullity, and accordingly that the estate of the latter was liable not only for all trust funds which actually came into his hands, but also for all assets of the estate of William J. Rusk which went into the possession of Berry, whose true relation to James E. Rusk was that of a mere agent. The plaintiff further sought to hold W. H. and T. J. Rusk accountable, in their capacity as the legal representatives of the estate of James E. Rusk, for all funds derived from the estate he represented which had come into their hands since his death. To this end, the plaintiff prayed that the equitable powers of the court might be exercised to compel an accounting in this same suit between the persons named as his usees and W. H. and T. J. Rusk, as such administrators, with respect to these trust funds; and that said usees might be allowed to appear in their own behalf as parties plaintiff,

so far as this branch of the litigation was concerned.   In his prayer for process the plaintiff asked that " the said W. H. Rusk and T. J. Rusk, of Cherokee county," might be required to appear at the next term of court to answer his complaint.   By an amendment allowed on February 25, 1901, the plaintiff inserted in his prayer for process, as a further designation of " the said W. H. Rusk and T. J. Rusk," the descriptive words: " as administrators of James E. Rusk, deceased."

All of the defendants made answer to the petitioner's complaint. In a separate answer filed by W. H. and T. J. Rusk they set up, among other special defenses, the following:   David Rusk, whose death occurred prior to that of William J. Rusk, left a widow, Luthira Rusk, and three children.   When James E. Rusk, as administrator, undertook to make distribution of that portion of the estate of William J. Rusk which fell to the heirs of David Rusk, he (the administrator) divided the sum to which these heirs were entitled into four equal parts, and allowed the widow, Luthira, to share equally with each of her children in the distribution of this sum. They knew that " their mother was getting an equal portion with them, and agreed and consented for the same to be paid to her," and are therefore estopped from now claiming that the amount paid to their mother, to wit $425.00, should have been paid over to them. Furthermore, "Luthira Rusk died in possession of money and other property which her said children divided among themselves and got the benefit of, some of it being the identical proceeds of the money she received from " the estate of William J. Rusk, and " it would be unjust for a court of equity not to require them to account for the funds paid to their mother" by his administrator.   On the 15th of April, 1901, his honor of the court below passed an order whereby, with the consent of all parties, the case was referred to an auditor.   A hearing was had before the auditor during the month of November, of that year, and on February 4, 1902, he duly submitted his report.   The same being adverse to the defendants, W. H. and T. J. Rusk, as administrators of James E. Rusk, filed exceptions both of law and of fact.   At the August term, 1902, of the superior court, the presiding judge passed an order reciting that, after hearing argument upon these exceptions to the auditor's report, it was adjudged that the exceptions of law be overruled, and that the exceptions of fact be disallowed.   To this order exception was taken,

and the case was brought to this court for review by a bill of exceptions sued out in behalf of W. H. and T. J. Rusk, in their representative capacity. In this bill of exceptions further complaint is made that his honor instructed plaintiff's counsel to submit the case to a jury, and, after counsel had offered in evidence the auditor's report, directed the jury to return a verdict in accordance with his findings, and entered up a decree on this verdict. Error is also assigned upon the refusal of the judge to sustain a motion by counsel for the plaintiffs in error, presented after the order above referred to was passed but before the final decree was signed, whereby they sought to have the name of W. D. Hill, ordinary, stricken from the petition which had been filed in behalf of the persons therein named as usees, on the ground that he was a useless party, etc. On the call of the case in this court, a motion was made to dismiss the writ of error, on the ground that "no copy of the bill of exceptions in said case was served upon defendants in error, or their attorney, within ten days after the same was signed and certified," there having been no waiver of service on the part of the defendants in error or their attorney.

1. From the record it appears that the bill of exceptions was certified by the judge on January 10, 1903, and that the service thereof was not completed until January 20, 1903. The motion to dismiss was predicated upon the case of *Mott* v. *Bruns. Pub. Co.*, 117 *Ga.* 149, which was decided by this court, February 7, 1903. The defendants in error contended that the service was not "within ten days after the bill of exceptions is signed and certified," as required by the code. The plaintiffs in error asked leave to review the *Mott* case, and leave was granted. After a careful search and review of all the cases decided by this court upon the method of computing time, we are satisfied that the *Mott* case was decided incorrectly and is in direct conflict with all the decisions dealing with cases in which certain privileges or duties were to be allowed or performed within a certain number of days. In all the cases in which a given number of days is prescribed for the exercise of a privilege or performance of a duty, this court has recognized, as the correct rule for computing the time, that the first or last day should be excluded. This was decided as early as *Neal* v. *Crew*, 12 *Ga.* 93. In that case the question was as to whether an appeal had been entered within four days after the adjournment of

the court. The court adjourned on Friday, the 17th of the month, and the appeal was entered on the morning of Wednesday, the 22d of the same month. The trial court refused the motion to enter the appeal, and on exceptions to that ruling this court held that Wednesday was within the time allowed for entering the appeal. The principal discussion in the opinion was as to whether the intermediate Sunday should be counted; the court holding that it should not, and that, excluding it, the appeal was entered in time. While the question as to the exclusion of the first or last day is not expressly referred to, the decision could not have been made unless the court had been of opinion that either the one or the other should be excluded. Otherwise, even excluding Sunday, the interval from Friday to Wednesday would have been five days, and the appeal too late. The case of *Baxley* v. *Bennett*, 33 *Ga.* 146, arose upon the question whether the sheriff served the defendant within five days from the return day of the court. The return day was October 22, and the defendant was served on October 28. This court, in computing the time, excluded the first day, and, inasmuch as the 27th, the last day, fell upon Sunday and had also to be excluded, held that service upon the 28th was within time. After these decisions, the Code of 1863 (§ 5, par. 8, now Pol. Code, § 4, par. 8) expressly provided that " When a number of days is prescribed for the exercise of any privilege or the discharge of any duty, only the first or last day shall be counted; and if the last day shall fall on the Sabbath, another day shall be allowed in the computation." From the adoption of the code up to the decision of the *Mott* case, this court has steadily adhered to the rule announced in the code.

In *Reid* v. *Jordan*, 56 *Ga.* 282, it appeared that suit in a justice's court was commenced on January 1, 1872, and the day fixed in the summons for the trial was January 20, 1872. Judgment was rendered against the defendant upon the latter day, and he filed an illegality alleging that twenty days had not elapsed from the date of the summons, January 1, to the 20th of January, and that the court was without jurisdiction to render the judgment, the law requiring that there should be twenty days from the date of the summons to the date fixed for the trial. The lower court overruled the illegality, but this court reversed the judgment, Warner, C. J., saying that, " counting the first day of the month and excluding the twentieth, as the 4th section of the code provides, the judgment

was rendered on the 19th day after the date of the summons, a day on which the justice had no legal power or authority to render the judgment under the statute; and that being so, the judgment was void for want of authority of law to render it at the time it was rendered." In *Cain* v. *Ligon*, 76 *Ga.* 102, the bill of exceptions was signed by the judge on February 10, and service on opposite counsel had on February 20. This court held that the service was within the time allowed by law, and refused to dismiss the writ of error. That case is precisely similar in its facts to the present case, and is controlling. In *Knoxville City Mills Co.* v. *Lovinger*, 83 *Ga.* 563, a judgment was rendered in a justice's court on July 26, and execution was issued on July 30. This court held that the execution was issued in less than four days after the judgment was entered, the defendant having four days within which to enter an appeal. In that case the court applied the code section above cited in reference to the exclusion of the first or last day. In *Morgan* v. *Perkins*, 94 *Ga.* 353, this court held that the same section applied. In that case the judgment complained of was rendered August 18, 1893, and the bill of exceptions was tendered on September 18. September 17 was Sunday. It was held that the tender on September 18 was within thirty days. Had the 17th not been Sunday, it would have been the last day, even under the code method of computation, for tendering the bill of exceptions. These dates do not appear in the printed report of the case, but we have examined the original record and find them therein. See also *Harvey* v. *Allen*, 94 *Ga.* 454. These cases show that this court has adhered to the rule of excluding the first or last day in computing a number of days. According to these cases, and we might say to all the modern cases outside of this State, the service of the present bill of exceptions was within ten days from the date on which the bill of exceptions was certified. We are aware that this court has in other cases, involving the computation of months and years, taken a different view, and has declined in such cases to exclude either the first or last day when the right fully accrued on the first. See the case of *Peterson* v. *Railroad Co.*, 97 *Ga.* 798, where Mr. Justice Lumpkin cites and follows the cases so ruling. Why the distinction or difference should have been made I am unable to say. After a full investigation of the subject, I myself think that the last-mentioned line of cases is contrary to all the modern authori-

ties on the subject, both in this country and in England (see the able and exhaustive note to Halbert v. Asso., 49 L. R. A. 193); but the principle decided in those cases has no application to cases involving the computation of a number of days, as will be seen by reference to the opinion in *English* v. *Ozburn*, 59 *Ga.* 392. The present case falls squarely within the code section requiring the first or last day to be excluded, and that code section is in accordance with the earlier decisions of this court, which are controlling. We must therefore decline to follow the *Mott* case, and must refuse to dismiss the writ of error.

2, 3. Before entering upon a discussion of the merits of the exceptions filed to the auditor's report, we will deal briefly with the two questions of practice presented by the complaint that the judge of the court below directed a verdict to be returned against the plaintiffs in error, and their further grievance that he refused to sustain their motion to strike the name of W. D. Hill, ordinary, as a party plaintiff to the suit. As to the first of these points, it is only necessary to remark, as was done in the case of *Lamar* v. *Allen*, 108 *Ga.* 165, that " The exceptions of fact having been disallowed and the exceptions of law overruled, a decree should have been rendered without the intervention of a jury; but as the proper result was reached by directing a verdict and entering a decree thereon, this error in practice will not necessitate a reversal of the " final judgment rendered.

The overruling of the motion to strike the name of Hill as a party plaintiff was proper. It was based upon the misconception that he was "a useless party," because the persons for whose use he brought suit were also parties plaintiff in their own right, and upon the further ground that there was a misjoinder of parties. Hill, in his official capacity as ordinary of Habersham county, was the only person authorized to bring suit on the administrator's bond, and therefore was not a useless but a most essential party. In no event should his name have been stricken from the petition. If counsel for the plaintiffs in error wished to raise any question as to there being a misjoinder of parties or causes of action, the petition should have been attacked by a timely special demurrer before the case was referred to an auditor. See *Eagan* v. *Conway*, 115 *Ga.* 130 (6), 135.

4. On the hearing before the auditor, W. H. and T. J. Rusk asked

that the amendment to the prayer for process against them, whereby they were designated as "administrators of James E. Rusk, deceased," should be stricken, and the case be allowed to proceed against them in their individual capacity. Really the amendment was unnecessary ; for the prayer for process as originally framed evidently referred to them in their representative, not in their individual capacity. The allowance of this amendment did not, therefore, in any way operate to their prejudice. Furthermore, the objection urged against it should have been made before the judge of the superior court when it was allowed in February, 1901, or they should have presented to him a motion to strike it before the term at which it was allowed had passed. *McCandless* v. *Conley*, 115 *Ga.* 48. Clearly the auditor had no right to review and set aside the judgment of allowance previously rendered by that court.

5. In one of the exceptions of law filed to the auditor's report, the complaint is made that he erred in admitting in evidence a "transcript of the annual returns of James E. Rusk and W. W. Berry, as administrators of W. J. Rusk." The contents of the document thus admitted are not, however, set forth either literally or in substance in this exception ; so we are not called upon to consider whether this documentary evidence should or should not have been received over the objections urged thereto. *Torras* v. *Raeburn*, 108 *Ga.* 345, cited and followed in *Rodgers* v. *Stern*, 112 *Ga.* 624.

6. The most hotly contested point on the hearing before the auditor was whether or not the appointment by the ordinary of Berry as a coadministrator with James E. Rusk was valid. The plaintiffs in error contended it was, and accordingly that the estate of James E. Rusk could not be held accountable for any devastavit which Berry may in that capacity have committed. On the other hand, counsel for the adverse party insisted that this appointment was void, which James E. Rusk was as matter of law bound to know, and that his estate was therefore liable for the acts of Berry while assuming to exercise the authority of an administrator, his true relation to James E. Rusk being that of a mere agent acting under his direction and guidance in winding up the estate of William J. Rusk. It appears from the record that Berry's application for appointment was not even signed. It was dated May 7th, 1883. No citation issued, but the ordinary, on the same day, passed an ex parte order granting the application. In so doing the ordi-

nary acted without any shadow of authority. As was distinctly held in *Torrance* v. *McDougald*, 12 *Ga.* 526: "Letters of administration, granted without the applicant's causing a citation to issue, and giving security, and taking the oath prescribed by law, are void; nor will a subsequent compliance with the statute in the two last particulars cure the defect, notice being indispensable." No one interested in the administration of the estate of William J. Rusk having been given legal notice of Berry's application and thus afforded an opportunity to appear before the ordinary in resistance thereto, it follows that no one was bound by his order, and that for this reason it should be treated as a mere nullity.

7. Counsel for the plaintiffs below offered in evidence a set of interrogatories which, at their instance, had been sued out for Berry. To a number of the questions therein propounded to him objection was made by counsel for W. H. and T. J. Rusk, on the ground that the same were "leading and suggestive of the answers" expected and desired. In passing upon this objection, the auditor stated that he was of the opinion that some of the questions were leading, but would nevertheless rule, that, "inasmuch as the interrogatories [were] propounded to a witness who [was] one of the defendants in the case on trial and whose interest [was] adverse to that of the plaintiffs, and who acted in conjunction with Jas. E. Rusk" and under his direction and advice, as appeared from the answers made by the witness, justice required that his testimony should be admitted. All it is necessary for us to say in this connection is, that the auditor did not, in so ruling, abuse the discretion with which he was vested. See *Travelers Ins. Co.* v. *Sheppard*, 85 *Ga.* 754, 796, and cases cited.

With regard to the part Berry took in winding up the affairs of the estate of William J. Rusk, he testified: "I suppose I did qualify as administrator. I took an oath as such. The sole purpose of my doing this was to represent the administrator, J. E. Rusk, in his absence and at his request. The arrangement for pay was, that J. E. Rusk was to divide commissions with me and pay me for extra services. I never have received one cent from the estate, nor did I from J. E. Rusk, neither as commissions or extra compensation or expenses. No, I never retained any pay or commission in winding up said estate." Objection to this testimony was made on the ground that Berry undertook "to set up a con-

tract with a dead man, which could not be done in that way." The auditor ruled that the testimony was inadmissible for the purpose of showing any liability to Berry on the part of the administrators on the estate of James E. Rusk; but as between them and the plaintiffs, the testimony was competent. It is clear, we think, that there was no error in this ruling; and certain it is that the plaintiffs in error were in no way prejudiced thereby, since the auditor did not in his report make any finding against them in favor of Berry, as to unpaid commissions or as to anything else.

8. As to the special equitable defense interposed by W. H. and T. J. Rusk, as the legal representatives of their deceased father, James E. Rusk, the following facts were disclosed. Without consulting any of the children of David Rusk, James E., as administrator, paid over to their mother $425.00, under the mistaken belief that she was entitled to share equally with them that portion of the estate of William J. Rusk which descended to the offspring of his deceased brother, David. The children never in fact agreed to this payment, nor were they ever called upon to consent thereto. They knew their mother was recognized by the administrator as one of the heirs of William J. Rusk, but were at the time of payment ignorant of the fact that she was not legally entitled to any of the proceeds of his estate. With a small portion of the money thus received by her she purchased presents for each of her children: and at her death left to them all of her belongings, consisting of a few articles of furniture, etc., and a trifling sum of money. One of these children, J. M. Rusk, testified as a witness that he had received, in the way of presents, etc., somewhere between thirty and thirty-five dollars of the amount paid to his mother by James E. Rusk, and was willing to give credit on his claim against the estate for all benefits thus received, a fair estimate of which would be $35.00. A daughter, Mary J. Dickerson, testified she had received presents from her mother of the value of $8.00, and $29.80 in money, thus making a total of $37.80 for which she was accountable. Sarah A. Brown, another of these children, estimated that she had received, directly and indirectly, benefits to the extent of "about forty dollars," by reason of the unauthorized payment to her mother of the $425.00. The auditor held, as we think correctly, that as the children of David Rusk never consented to such payment, or in any way misled the administrator into making it,

they were not estopped from characterizing it as illegal and calling upon the representatives of his estate for an accounting and settlement on the basis of a lawful distribution of the trust funds coming into his hands. We are, however, of the opinion that the auditor should have charged the children of David Rusk with the value of the benefits which they admitted they derived by reason of the mistake committed by James E. Rusk in treating their mother as one of the heirs of his intestate. Accordingly, we have given direction whereby his honor below may so amend and mold the final decree entered against the plaintiffs in error as that they may not be held liable for $112.80 of the principal sum which the auditor found should be accounted for, nor charged with interest on a greater sum than that for which judgment could properly have been rendered.

9. In one of the exceptions of fact filed to the auditor's report, complaint is made in general terms that the evidence introduced on the hearing before him did not authorize a finding that there was "any sum or sums whatever in the hands of James E. Rusk, as administrator, derived from the estate of W. J. Rusk, deceased, due to either of the plaintiffs named," but, on the contrary, the evidence showed that as administrator he had paid out to them "more money than they were entitled to under a fair and legal distribution of said estate." There is no merit in this exception, since there certainly was ample evidence to support a finding that James E. Rusk, the administrator, had not settled in full with the heirs of his intestate; and if any error was committed in fixing the precise balance to which they were entitled, such error should have been precisely pointed out.

*Judgment affirmed, with direction. All the Justices concur.*