TARVER *et al. v.* LANE, ordinary, for use, etc.

1. Where legatees under a will institute proceedings to have a named executor removed and one chosen by themselves appointed in his place, and such executor is removed and the person so chosen by the legatees is appointed as his successor, though the appointment of the last named is void because of a failure to comply with the requirements of the law in regard to the removal of one executor and the appointment of his successor, yet the person named as successor to the named executor becomes in fact, upon receiving and taking charge of the assets of the estate, the agent of the legatees and manager of the estate. And where such successor of the executor received certain shares of stock which the executor had bought without authority to do so with the money of the estate of his testator, and in consequence of the unauthorized purchase of such stock the legatees would have had the right, within a reasonable time, to repudiate the purchase, refused to accept it, and hold the executor and his bondsmen responsible for the amount of money thus invested without authority in the stock, they could not, after they had knowledge of the purchase, which they received in a short time after the appointment of the successor of the executor, retain the stock for an unreasonable length of time and thereby take the chance of its becoming a profitable investment, and then, after the lapse of such reasonable time, return the stock and recover the money invested therein when it became apparent that the stock had become worthless while in the hands of their agent.

2. None of the other rulings made by the court require a reversal of the judgment.

No. 2993. SEPTEMBER 28, 1922. REHEARING DENIED SEPTEMBER 30, 1922.

Equitable petition. Before Judge Worrill. Early superior court. October 11, 1921. See *Lane v. Tarver,* ante, 570.

*A. H. Gray* and *Ryals & Anderson,* for plaintiffs in error.

*W. G. Park* and *Glessner & Collins,* contra.

BECK, P. J. This was a suit in equity for accounting, etc., brought by C. C. Lane, ordinary, for the use of Mrs. Martha J. Hudspeth, Mrs. Martha E. Cozier, and Julius Hudspeth, against J. B. Tarver, as executor of the will of J. C. Hudspeth, deceased, and the United States Fidelity and Guaranty Company as surety on the bond of Tarver as executor. The court, after hearing and passing on certain demurrers to the petition, passed an order referring the case to an auditor. To the report of the auditor both the plaintiff and defendants within due time filed their exceptions of law and of fact; and after final argument upon the questions raised by these exceptions the court rendered its judgment on them, and in that judgment overruled all of the exceptions both of law and fact filed by the defendants, and sustained certain

exceptions of law and fact filed by the plaintiff. To the judgment of the court upon these exceptions of law and fact, in so far as they were adverse to the defendants in the court below, they excepted and brought the case by writ of error here for review. Mrs. Hudspeth, who was the life-tenant under the will of J. C. Hudspeth, by separate writ of error duly sued out brought the decisions adverse to her to this court, and the case as presented in her bill of exceptions was decided in the case of *Lane* v. *Tarver,* 153 *Ga.* 570 (113 S. E. 452), and in that decision a full and complete statement of the allegations of the petition is set forth, and it is unnecessary to repeat these allegations here.

1. One of the questions made in the pleadings and by the evidence was, whether Tarver had been removed from the executorship and Bridges appointed as his successor in the trust. In the case of *Lane* v. *Tarver,* referred to above, it was said: " 3.- When legatees under a will, who are sui juris, became dissatisfied with the executor's management of the estate, and employed counsel to have him removed and another person selected by them appointed as his successor in the trust; whereupon the executor filed his petition in the court of ordinary, seeking to resign as such executor, and to have appointed as his successor the person so selected by the legatees, having previously turned over the estate to that person at the instance of the legatees, for which such person gave his receipt individually and not as executor; and where the court of ordinary, on said petition, passed an order accepting the resignation of the executor and appointing in his stead the person selected by the legatees, both the executor and the legatees believing that said order was valid; and where the whole transaction was conducted by the attorney of the legatees, the person so appointed as the successor of the executor in the trust, when it afterwards developed that the order accepting the resignation of the executor and making such appointment was void, will be treated as the agent of the legatees; and the executor will not be held liable for the property so turned over to the proposed successor in the trust upon the selection of such legatees. 4. The legatees, being the legal and equitable owners of the estate, and being sui juris, could manage the estate as they deemed best; and when they forced the executor to resign, and procured an order of the court accepting his resignation and appointing another person of their

choice as his successor in the trust, the executor having previously turned the estate over to such person at their instance, they can not hold the executor liable as for a devastavit for the property so turned over, when it afterwards developed that such order was null and void. Under such circumstances a court of equity will treat the person of their choice, so illegally appointed, as their agent to receive and manage the property of the estate."

The legatees referred to in the excerpts from the decision just quoted include, in addition to Mrs. Hudspeth, the defendants in error in this case, that is, Mrs. Crozier and Julius Hudspeth. The ruling there made, that under the circumstances recited the court of equity will treat the person chosen by the legatees, though not legally appointed as the successor in the trust, as their agent to receive and manage the property of the estate, is, when considered in connection with certain uncontroverted facts appearing in the record, decisive as to the main question in this case. Tarver, who had been the executor of the will of J. C. Hudspeth, deceased, after Bridges had been appointed under circumstances that made him the agent of the legatees and the manager of the estate of the decedent, turned over to the latter the assets of the estate. Among these assets were fifty-one shares of stock in the Farmers State Bank, which he had purchased with funds of the estate; thirty-one of the fifty-one shares he had purchased from himself with the funds of the estate. This occurred in 1915. The evidence is not clear as to whether Bridges knew the facts relating to the circumstances under which this stock was obtained by and transferred to the estate at the time the assets of the estate were turned over to him by his predecessor in the trust; but that knowledge of these circumstances came to him afterwards is made clear from the evidence.

But more important in deciding the question we have before us than the time at which Bridges learned of this transaction is the fact, clearly shown, that the legatees, the defendants in error, knew that their agent, Bridges, had received this stock as a part of the assets, and that the stock had been bought for the estate by the defendant in the case, because the evidence is positive that the legatees and their attorney discussed the question of retaining the stock or bringing suit against Tarver on account of this investment in the stock. This knowledge came to them two or

three years before they finally brought suit.  We think this knowledge is fatal to their right of recovery.  When they learned that Bridges had received this stock as a part of the assets and that Tarver had illegally invested the money of the estate in the stock, they should promptly have moved to require him to pay the money that he had invested in the stock into the hands of his successor in the trust.  They could not delay for years instituting their action, thereby taking a chance of the stock turning out to be a good investment, in which event they could have retained it.  They could not hold it so as to speculate on future values.  Manifestly, the responsibility was on them or their agent to decide whether the stock should be returned to Tarver and a demand made upon him for the return of the money invested; for he could not demand the return of the stock, having turned it over to Bridges, the agent and manager for the legatees.  After they had knowledge of Tarver's action in regard to the stock and of the receipt of it by Bridges, a failure upon their part to act within a reasonable time, by bringing suit or making a demand upon Tarver for the payment of the funds invested in the stock, would amount to a ratification of the acts of their agent in receiving this stock; and a delay of over two years was certainly an unreasonable time.  The case of *Rush* v. *Hill,* 117 *Ga.* 722 (45 S. E. 42), and other cases deciding similar questions, are based upon a state of facts differing in material particulars from the facts of this case, and nothing here ruled is in conflict with the principles laid down in those cases.  We therefore hold that the court erred in overruling the exceptions to the auditor's report which made the defendant liable for the funds invested in the fifty-one shares of bank stock.

2.  As is stated in the brief of counsel for plaintiff in error, the question decided in the foregoing division of the opinion covers the most important issue in the case, and practically the only issue involved; and it is unnecessary, in view of the decision upon this material question, to enter upon a discussion of subsidiary questions relating to the admission and exclusion of evidence and to rulings upon the findings of law and of fact made by the auditor.  We have carefully examined these; and with the exception of the ruling dealt with in the first division of the opinion, we find no ground for reversing the judgment of the court.

The plaintiff in error having obtained a reversal of the judgment of the court below in material respects, the costs of bringing the case to this court are taxed against the defendant in error.

*Judgment reversed in part and affirmed in part. All the Justices concur.*

### ON MOTION FOR REHEARING.

PER CURIAM. In overruling the motion for rehearing in this case the court will not undertake to elaborate the rulings made in the opinion and headnotes constituting the decision in the case as handed down, but will add, in view of the contention made in the motion for rehearing that the decision in this case is in conflict with a ruling adverse to the plaintiffs in error in the case of *Lane* v. *Tarver,* 153 *Ga.,* supra, that the court in that case was passing upon exceptions made by Mrs. Hudspeth, the widow of the testator, who was the life-tenant and had the enjoyment of the property and the income therefrom during her life. In the present case the defendants in error were the remaindermen and occupied a different position, relatively to expenditures made and funds invested in conducting farming operations, from that which was occupied by the widow, who not only knew that the executor was conducting such farming operations and allowed them to be carried on without objection, but who was entitled to the benefit of the successful conduct of such farming operations. The ruling adverse to the life-tenant, upon the claim for the funds invested and expended in conducting the farming operations referred to, did not require a ruling adverse to the remaindermen, who were interested, not in the income from the estate, but in the corpus of the estate, upon the termination of the life-estate.