## LINDER et al. v. WIMBERLY et al.

1. A petition in which it is alleged that on December 11, 1920, the plaintiff was the owner and in possession of a certain described tract of land to the purchase-price of which had been applied the proceeds of certain real and personal property of his wife, who was joined as coplaintiff, and that the plaintiffs had been compelled to surrender their possession of the land by the fraud and duress of a person named as defendant, acting in conjunction with another named as codefendant and alleged to be in possession of the land described, and that the petitioning husband had executed certain conveyances as mere security deeds, receiving, contemporaneously with their execution, bonds for title which had been fraudulently and forcibly taken from his possession and destroyed by the defendants in pursuance of the conspiracy between them by which one of the defendants conveyed the land to the other, who had full knowledge of all the plaintiffs' rights, and placed him in possession as ostensible owner thereof,—the petition praying that the deeds executed by plaintiff be decreed to be canceled because the alleged indebtedness of the plaintiff had been paid, and that the deed executed by one of the defendants to the other be canceled as fraudulent and void and a cloud upon the title of the plaintiff, and also praying that an accounting be had, and tendering to pay the amount, if any, of plaintiff's indebtedness upon the debt which the deed made by him was given to secure, was not subject to dismissal upon general demurrer.

2. If the wife was improperly joined as coplaintiff with her husband, the point should have been presented by timely special demurrer upon the ground of misjoinder of parties and causes of action; and likewise, by special demurrer, any redundant or impertinent matter in the petition might have been reached and corrected, but a tree is not necessarily to be cut down as barren merely because its fruit is partly concealed by overabundant foliage. The tree should not be cut down and destroyed by the ax general demurrer, but rather should be properly trimmed by the pruning-knife special demurrer.

No. 4016. MAY 13, 1924.

Equitable petition. Before Judge Hardeman. Toombs superior court. August 29, 1923.

*William B. Kent,* for plaintiffs.

*I. H. Corbitt* and *W. E. Brown,* for defendants.

RUSSELL, C. J. The exception presented by this bill of exceptions is to the dismissal of a petition and the amendment thereto, which is somewhat remarkable for its length and the unusual nature of some of its verbiage. The demurrer attacks the petition as a whole. If the petition is unusually verbose, the demurrers are unusually concise, and no effort is made to put the finger upon any specific point of weakness in the armor of the plaintiffs. The demurrers must necessarily be treated as general,

and as pointing to all the defects of the petition at once; for in any other view they would be themselves demurrable as failing to set out any specific defect in the petition. *Douglas, Augusta & Gulf Ry. Co.* v. *Swindle, 2 Ga. App.* 550 (59 S. E. 600). The grounds of the demurrer are as follows: (1) "No cause of action is set out in and by the allegations contained in plaintiff's petition." (2) "Said petition is absolutely and wholly unintelligible from beginning to end, being so loosely worded and drawn as not to be capable of intelligent interpretation, and thus failing to express plainly and distinctly the intention of the parties plaintiff." (3) "Said petition fails to disclose such a state of facts as would entitle the plaintiff Queen Linder to relief sought." There can be no question whatever that these are grounds of general demurrer, and therefore they raise only the question whether the allegations of the petition so wholly fail to disclose any cause of action as to be incurable even by the right of amendment, which in our State has been held to be as broad as the plan of universal salvation. What are the contents of this petition?

The petition alleges that on December 11, 1920, G. A. Linder owned and was in possession of a tract of land in Toombs County, Georgia, "in the 1536th dist. G. M., bounded on the north by lands of Fred O'Neal estate, Little Rockey Creek: on the east by lands of W. G. Dickerson and on the west by lands of W. H. Odum Estate, being more particularly described by metes and bounds in the plat recorded in Book 2, pages 362, 363, in the office of the clerk of the superior court of said county, containing three hundred and 27 and 3/10 acres, more or less." On that day he borrowed $5,775 from Pearsons-Taft Land Credit Co., and to secure this loan executed a deed under the provisions of § 5306 et seq. of the Civil Code, receiving from the company its bond to reconvey title. Being indebted to E. M. Wimberly in the sum of $1,636.35, to secure this indebtedness he executed to him, on December 12, 1920, a deed conveying the described tract of land, subject to the loan deed of the Land Credit Co. aforesaid, and contemporaneously with the execution of this deed Wimberly made Linder a bond for title to reconvey the land upon payment of the indebtedness alleged to be $7,333, including the $5,775 which Linder had borrowed from the Land Credit Co. Later Wimberly went to Linder's home while he was absent, and asked Mrs. Linder

to let him see the papers in her possession, which included both the bond for title executed by the Land Credit Co. and the bond for title which Wimberly himself had only a short time before executed and delivered. After Mrs. Linder had handed him all the papers, and over her urgent pleading and protestations, Wimberly took away all the papers and has never returned them; and it is charged that he destroyed the bonds for title in order to claim title to the land, since the conveyance from Linder to Wimberly, though merely a security deed, is upon its face absolute. After thus getting possession of the bonds for title, Wimberly, who is alleged to be a very dangerous and violent man, asserted absolute title to the premises, threatening to have petitioners and their family evicted by the sheriff if they did not vacate at once and yield possession; and petitioners, being very illiterate and entirely unversed in business, yielded possession by reason of their great personal fear of Wimberly. In this manner Wimberly took possession of the premises described as well as certain described personal property, the value of each specific article being definitely alleged. The petitioners yielded possession of their home and gave up the personal property only by reason of "force, duress, and without their consent, and while they were under the horrible influence of a man who was taking all they had without any authority so to do." It is alleged that while Wimberly asserted title, he had title only for the purpose of paying the alleged indebtedness, and that he has taken from them a farm valued at $21,000 for the purpose of paying the alleged indebtedness of $1,636.35, and that he "menaced, threatened, coerced, and forced petitioners to turn same over to him, and made out like he was going to have them put in jail unless they did as he demanded," and, "acting under the greatest possible fears, . . they moved away from said land."

Though the foregoing allegations set forth a very unusual statement of facts, we do not think the statements are unintelligible; and admitting them to be true, as they must be admitted for the purposes of demurrer, they set forth a wrong which entitled the plaintiff G. A. Linder to some remedy. Further on in the petition there is stated a sufficient reason why Duncan should be made a party defendant. It is alleged in substance that Wimberly has made and executed a deed to Duncan to the premises described

for an alleged consideration of $15,000, that Duncan knew all the facts in relation to the entire transaction, including of course that the title placed in Wimberly was a mere security for debt, and was also aware of the fact that the lands were originally purchased with the funds derived from the separate estate of Mrs. Queen Linder. The petitioners aver that the conveyance by Wimberly to Duncan was only a part of a conspiracy and scheme to cheat, defraud, and swindle petitioners out of their land. The facts stated as to Duncan would entirely prevent any claim upon his part that he is an innocent purchaser whose rights cannot be affected or his possession disturbed by the alleged fraud and duress of Wimberly, and he is a necessary party defendant to enable the petitioners to secure the relief prayed. It is alleged by way of amendment that Duncan and Wimberly entered into a conspiracy to defraud petitioners out of all of the aforementioned property, and took said property by threatening to have petitioners arrested, asserting that they had already had papers sworn out and were looking for the sheriff, and had already ordered the sheriff to come and throw them out, and that petitioners were ignorant, scared, intimidated, and coerced, and under the complete control of Wimberly and Duncan, who were acting together in a common conspiracy to bring about the result, and who took away from petitioners their property without paying them one cent for the same other than the fact that said Wimberly claimed that Linder owed him the sum of $1,636.35, said Wimberly and Duncan all the time well knowing of the equity of Mrs. Queen Linder, and that G. A. Linder "had owned and possessed a good and valid bond for title to said described land, duly issued, signed, sealed, and delivered, in which it was provided that when he paid said Pearsons-Taft Land Credit Co. the said sum of $5,775 they were bound to make and execute to said petitioner good and legal title to said land, and petitioners were in possession of said bond and of said land under the terms of said bond."

In the amendment it is further alleged that all the alleged indebtedness to Wimberly had been discharged by the payment of $1,000 in cash, realized out of the loan from the Land Credit Co., and the petitioners averred continued readiness to pay the Land Credit Co. the $5,775 which had been included in the $7,333 mentioned in the deed to Wimberly. The petition-

ers alleged that Wimberly had cut and taken away timber of the value of $1,500, had received rents of the value of $1,500 per annum, and that the use and control of the personal property was of the value of $1,000. They prayed that Wimberly be required to come to an accounting with them; and G. A. Linder still offers to pay said Wimberly whatever amount he may be due, and asks that a complete accounting may be had, and whatever is just, right, and equitable may be done. It is averred that the deed under which Wimberly claims to hold said land was not given as an absolute conveyance, but only as security for the aforesaid debt. It is averred that Mrs. Queen Linder owned 100 acres of land and 21 head of cattle, which were her separate estate, and that this real and personal property was sold and the proceeds used to pay upon the original purchase-price of the 327 acres of land already described, and that Wimberly and Duncan knew of her equitable interest in the premises. The prayers of the petition are: that Wimberly and Duncan be required to render an accounting, petitioners offering to pay whatever may be the difference found; that the deed from Linder to Wimberly be decreed to be a security deed; that the deed from Wimberly to Duncan be canceled; that Wimberly and Duncan be required to reconvey said land to petitioners; that Duncan and Wimberly be restrained from deeding away the land described, or from doing anything that would endanger the title of petitioners to said land; and for such other and further relief as may be necessary and proper.

We come now to the third ground of the demurrer, in which it is alleged that the "petition fails to disclose such a state of facts as would entitle the plaintiff Queen Linder to relief sought." It may be that this ground of the demurrer was intended to set up that as to Queen Linder there is a misjoinder of parties and causes of action, and it may or may not be true that the complaint is that the petition was insufficient; but the demurrer is insufficient if such was the purpose. This court has several times held that a demurrer upon the ground of misjoinder is a special demurrer. *Reese* v. *Reese,* 89 *Ga.* 645 (3) (15 S. E. 846); *Rusk* v. *Hill,* 117 *Ga.* 722 (45 S. E. 42); *Ga. R. & B. Co.* v. *Tice,* 124 *Ga.* 459 (52 S. E. 916, 4 Ann. Cas. 200). The demurrer as pleaded is fatally defective as a special demurrer. The statement that the petition as a whole fails to disclose such a state of facts as would entitle

Queen Linder to the relief sought leaves the plaintiff to conjecture on account of what specific reason or why the facts stated fail to entitle her to relief. It may as well be the omission of some necessary allegation by reason of the omission of which any plaintiff would be debarred from recovery, or it may be because she is improperly joined in the suit. Her allegations may be too defective to authorize a recovery on her part, though the defendant does not object to her presence in the case. There is a vast difference between a general demurrer and one special in its nature. A general demurrer is a sweeping attack upon the whole case; special demurrers must be specific, must be exact, must leave nothing for conjecture. In the language of Judge Erskine in *Martin* v. *Bartow Iron Works,* 35 *Ga.* 320, 323 (Fed. Cas. No. 9157), it must put its "finger upon the very point, otherwise the demurrer may not be noticed." Being itself a critic, it must be free from imperfections. For this reason, the third ground of the demurrer, being general, did not afford reason for a dismissal of the petition as a whole, even though no amendment was offered by the plaintiff. Had the demurrer been special, the plaintiff might have amended if there be a misjoinder. The point is not now before us, but it is not altogether certain that the petition is subject to special demurrer on the ground of misjoinder; for it appears that from Mrs. Linder the bond for title was obtained; it appears that partly with her money the land which is now claimed by and in possession of the defendants was obtained; and although in one view of the case it may appear that the defendants are not concerned with the dealings between husband and wife or with the issue as to whether title should be decreed to Queen Linder so as to transform her equitable interest into legal title, still, in view of the fact that the defendants are in possession of the land in which Mrs. Linder claims equitable title and a right to legal title, and their rights could not be affected except in a proceeding in which they are parties, it would seem to be proper that equity should take charge of the entire matter and settle in one suit the respective rights of all the claimants in the subject-matter of the litigation, both realty and personalty. The defendants Wimberly and Duncan are not concerned with the respective rights as between the plaintiff husband and his wife; but if, as alleged in the petition, they obtained the property, either with or without

good and valuable consideration, with full knowledge of the rights of the plaintiff Queen Linder, their rights might be subject to hers of which they were fully cognizant.

We think the learned trial judge erred in sustaining the general demurrer. Under the allegations of the petition, assumed to be true, the plaintiffs' tree appears to contain good fruit. Even if the fruit be somewhat concealed by a superabundance of leaves, it should not have been cut down with the ax general demurrer, but rather have been pruned, if necessary to the ripening of the fruit, with the pruning-knife special demurrer.

*Judgment reversed. All the Justices concur, except Hines, J., disqualified.*