## DANIEL, adm'r, et al. v. BANK OF WEST POINT.

The court did not err in overruling the general demurrer to the petition, or in refusing a new trial.

- No. 109. FEBRUARY 22, 1918. REHEARING DENIED FEBRUARY 28, 1918.

Equitable petition. Before Judge Freeman. Troup superior court. December 9, 1916.

W. B. Meetze died in September, 1912. At the time of his death he was conducting a general mercantile business, a cotton warehouse, a cotton-gin for the purpose of ginning cotton for himself and for the public, and farmed on his own lands and the lands of others, and supplied the tenants on those farms, etc. After his death his son-in-law, W. K. Daniel, was appointed administrator upon his estate, and also guardian of Earl D. Meetze, the minor son of W. B. Meetze. The heirs of W. B. Meete were his widow, his daughter Mrs. W. K. Daniel, and two sons, Will Meetze and Earl D. Meetze. All were of age except Earl, who became of age

pending the trial of this case. Will Meetze conveyed his interest in the estate to the other three heirs. All the debts of W. B. Meetze existing at the time of his death were paid. In May, 1915, the Bank of West Point brought an equitable petition against W. K. Daniel, administrator of the estate of W. B. Meetze, W. K. Daniel as guardian of Earl D. Meetze, W. K. Daniel individually, Mrs. W. B. Meetze, and Mrs. W. K. Daniel, for injunction and other equitable relief, alleging as follows: Mrs. W. B. Meetze and Mrs. W. K. Daniel continued the businesses just as they were being conducted by W. B. Meetze in his lifetime, and W. K. Daniel was in charge of them as manager or agent by authority of Mrs. Meetze and Mrs. Daniel, who consented and acquiesced in what he did. "The said businesses have been operated at some times under the name of W. B. Meetze's, and some times under the name of W. B. Meetze estate or estate of W. B. Meetze, and some times under the name of W. K. Daniel, admr. of W. B. Meetze, and some times under the name of W. B. Meetze estate, W. K. Daniel, Manager." Mrs. Meetze and Mrs. Daniel have been maintained and supported, since the death of W. B. Meetze, from these businesses. The returns of W. K. Daniel as administrator, in addition to the sums drawn from the estate by Mrs. Meetze and Mrs. Daniel, show net profits earned by the operation of the business, for the year ending July 1, 1913, $2723.66, for the year ending July 1, 1914, $2545.87, for the year ending July 1, 1915, $5064.10; and that the stock of goods was maintained and the real estate preserved and large amounts of cotton accumulated. In 1914 the plaintiff furnished, for use in connection with and in running said businesses, and in buying merchandise for the store and running the farm and warehouse and gin, the sum of $3673.93, for which amount written instruments in the form of notes were given to the plaintiff, one signed, "W. B. Meetze Estate (L. S.), by W. K. Daniel, Admr. (L. S.)," and the others, "W. B. Meetze Estate (L. S.), by W. K. Daniel, Mgr. (L. S.)." In November, 1914, warehouse tickets for 100 bales of cotton stored in the W. B. Meetze warehouse at Gabbettville, and belonging to the defendants, were delivered to the Bank of West Point as collateral security for the above indebtedness. In April, 1915, without the knowledge and consent of the plaintiff, this cotton was shipped to LaGrange and stored in a warehouse there, and Daniel attempted to sell it, but the sale was

stopped by virtue of a trover suit. There were charges of fraud, and allegations that the plaintiff owned and held title to the 100 bales of cotton; that Daniel was insolvent, etc. The prayers were, to recover the cotton and subject it to the payment of the amounts furnished by the plaintiff; and for judgment against W. K. Daniel as administrator of the estate of W. B. Meetze, to be collected out of the assets in his hands to be administered, and against Mrs. W. B. Meetze, Mrs. W. K. Daniel, Will Meetze, and Earl D. Meetze.

The court overruled a demurrer to the petition, except as to paragraph two, and refused to consider an additional demurrer to the petition as amended; to which judgment exceptions pendente lite were taken. The case proceeded to trial, and a verdict and decree were rendered in favor of the plaintiff against Mrs. W. B. Meetze, Mrs. W. K. Daniel, and W. K. Daniel, administrator of the estate of W. B. Meetze, as to the assets in his hands to the extent of the interest of Mrs. W. B. Meetze and Mrs. W. K. Daniel. A verdict was directed in favor of the minor, Earl D. Meetze. A motion for new trial was overruled, and the defendants excepted.

*M. U. Mooty* and *Ryals & Anderson,* for plaintiffs in error.

*Frank Harwell* and *Hatton Lovejoy,* contra.

HILL, J. (After stating the foregoing facts.) The rulings to which exceptions are taken revolve around the main and controlling question in the case, namely, whether Mrs. Meetze and Mrs. Daniel were the real, equitable owners of the estate of W. B. Meetze and were conducting the business which had been carried on by the intestate in his lifetime through their manager or agent, W. K. Daniel, who was also the administrator of the estate of W. B. Meetze; and whether Mrs. Meetze and Mrs. Daniel are responsible for the money borrowed by Daniel to run the business, and for which Daniel gave to the plaintiff notes secured by cotton, etc. There were four heirs of the estate of W. B. Meetze. One of them, Will Meetze, sold his interest to the other three heirs, which eliminates him. In an amendment to the petition it was alleged that another heir, Earl D. Meetze, a minor (who arrived at age pending this litigation), had been settled with by his guardian, W. K. Daniel; and on the trial the court directed a verdict in favor of the minor, who is also protected by the decree as to his interest, whatever that is. So the only other heirs interested in the litigation and in the estate are Mrs. Meetze and Mrs. Daniel. The

record discloses that all of the debts of the estate of W. B. Meetze have been paid. There was therefore nothing left for the administrator to do, so far as the record shows, except to turn the property owned by the two adult heirs over to them and be discharged. But the record shows that he continued to conduct the business at the instance of Mrs. Meetze and Mrs. Daniel. On the death of a person in this State intestate, owning real estate, the title to the real estate vests in his heirs immediately, subject to be administered for the purpose of paying the debts and for distribution among the heirs at law. The title to personal property vests in the administrator; but after the debts are paid the equitable title thereto is in the heirs at law. See Civil Code (1910), §§ 3157, 3929-3933. The debts of the estate of W. B. Meetze having been paid, the remaining adult heirs, Mrs. Meetze and Mrs. Daniel, could bind themselves and their interest in the estate. The record here is somewhat voluminous, but we have examined it carefully, and the evidence authorizes the conclusion reached by the jury to the effect that the business was conducted by Daniel as the agent or manager of Mrs. Meetze and Mrs. Daniel, who during the conduct of the business derived maintenance and support from it. This case is bottomed on the principle that Mrs. Meetze and Mrs. Daniel are the legal and equitable owners of that portion of the estate affected by the judgment, and, all the debts of the decedent having been paid, that they can bind their interest in the estate for whatever debts they create or authorize. A reading of the evidence in this record will impress one with the fact that Mr. and Mrs. Daniel and Mrs. Meetze were in perfect accord as to the management and control of this property through Daniel. "Express direction in a will to keep the estate together, and carry on farming operations, implies a limited power in the executrix to incur debts on the credit of the estate for needful supplies, etc., as prudent farmers usually do in the management of their own business of like kind." *Palmer* v. *Moore,* 82 *Ga.* 177 (8 S. E. 180). If a testator can give legal direction as to the management of his estate after his death, there seems to be no reason why the legal and equitable owners of an estate after an intestate's death, who are sui juris, can not do the same thing by directing the operation of the business after all the debts of the estate are paid, to the extent of their own interest. The circumstances attending

the conduct of the business of the W. B. Meetze estate show that Daniel was conducting it as manager for the adult heirs, Mrs. Meetze and Mrs. Daniel; and the jury were authorized to so find. He reserved a salary of $1200 per annum, the same amount that he had received before the death of W. B. Meetze for a like service. He was not authorized as administrator to pay himself such a salary out of the funds of the estate, certainly not after the first year, without an order of a proper court for that purpose. And there was testimony tending to show that Mrs. Meetze and Mrs. Daniel "were running along the business as they did before Mr. Meetze died." The evidence tends to show that Mrs. Meetze and Mrs. Daniel have derived their living expenses from the proceeds of the businesses conducted through Daniel as manager, and that the $3500 borrowed went into these businesses. After authorizing and acquiescing in this management by Daniel, and receiving their living expenses from it for several years, it would be contrary to every principle of equity and justice to permit the plaintiffs in error to repudiate now the acts of their agent and leave their creditors to the mercy of an insolvent manager. The testimony of the witness Webb was to the effect that Mrs. Meetze in a conversation with him declared that the Bank of West Point had "some cotton tied up; and we don't think they treated us right on it, from the fact that cotton was so low; if they hadn't treated us that way, we would have went ahead and settled up everything we owed." And there were similar statements accredited to Mrs. Daniel. None of the rulings complained of require a reversal. The verdict was supported by the evidence, and the court properly overruled the motion for a new trial.

*Judgment affirmed. All the Justices concur, except Fish, C. J., absent.*