LANE, ordinary, for use, etc., *v.* TARVER *et al.*

1. An executor, prior to the act of July 24, 1920 (Ga. Laws 1920, p. 79), was required to make his first annual return on or before the July term of the court of ordinary next after his qualification, although he may have qualified as such in less time than one year prior to said term; and on his failure to make such return by that time he forfeited all commissions on transactions during the year in which no return was made; and when he applied the money of the estate to the payment of such forfeited commissions, he could be made to account therefor as for a devastavit.

2. In an equitable proceeding the judge, in the exercise of a sound dis--cretion, can determine upon whom the costs thereof, including the fee of the auditor, shall fall; and his decree in this case, awarding such costs equally against the plaintiff and the defendants, was not an abuse of his discretion.

3. When legatees under a will, who are sui juris, became dissatisfied with the executor's management of the estate, and employed counsel to have him removed and another person selected by them appointed as his successor in the trust; whereupon the executor filed his petition in the court of ordinary, seeking to resign as such executor, and to have appointed as his successor the person so selected by the legatees, having previously turned over the estate to that person at the instance of the legatees, for which such person gave his receipt individually and not as executor; and where the court of ordinary, on said petition, passed an order accepting the resignation of the executor and appointing in his stead the person selected by the legatees, both the executor and the legatees believing that said order was valid; and where the whole transaction was conducted by the attorney of the legatees, the person so appointed as the successor of the executor in the trust, when it afterwards developed that the order accepting the resignation of the executor and making such appointment was void, will be treated as the agent of the legatees; and the executor will not be held liable for the property so turned over to the proposed successor in the trust upon the selection of such legatees.

4. The legatees, being the legal and equitable owners of the estate, and being sui juris, could manage the estate as they deemed best; and when they forced the executor to resign, and procured an order of the court accepting his resignation and appointing another person of their choice as his successor in the trust, the executor having previously turned the estate over to such person at their instance, they can not hold the executor liable as for a devastavit for the property so turned over, when it afterwards developed that such order was null and void. Under such circumstances a court of equity will treat the person of their choice, so illegally appointed, as their agent to receive and manage the property of the estate.

5. While an executor can not legally conduct the farming operations of his testator after the expiration of the current year, and will be liable for any loss to the estate growing out of such conduct of the business of the testator, still if an executor, with the knowledge of the life-tenant,

who had a life-interest in the entire estate, and without protest on her part, farmed the lands of the estate, and in doing so used the funds of the estate in defraying the expenses of such farming operations, he will not be liable to her for such funds, if he conducted such farming operations under an express or implied agreement with her, or if he turned over the crops grown at her instance to a person selected by her and appointed by the court of ordinary as his successor in the office of executor, although such appointment turned out to be void; as such person will be treated in equity as her agent to receive the same, by which conduct she will be held to have ratified the act of the executor in conducting such farming operations, especially when the value of such crops exceeded the cost of production and the amount of the funds of the estate used in such business.

6. When an executor, after the current year, conducts the farming operations of the testator, and expends money of the estate in conducting said operations by express or implied agreement between him and the life-tenant, or the latter ratifies the expenditure, if made without her consent, by receiving the fruits of the illegal venture, being the owner of the entire estate for life, and judgment is rendered against the executor and the surety on his bond in favor of the remaindermen for funds of the estate invested in said farming operations and appropriated by the executor for extra compensation for services in such business, the defendants would be entitled to a judgment over against the life-tenant for said funds of the estate so illegally used by the executor in conducting said farming operations.

7. The court did not err in allowing an amendment offered by the defendants, after the auditor had filed his report, and during the argument of exceptions thereto, the purpose of which was to adjust the pleadings to the proof, so that the same would support a decree administering the proper equitable rights of all the parties, upon the facts reported by the auditor.

No. 2901. June 14, 1922.

Equitable petition. Before Judge Worrill. Early superior court. October 11, 1921.

C. C. Lane as ordinary of Early county, for the use of Martha J. Hudspeth, Martha E. Crozier, and Julius E. Hudspeth, filed suit in Early superior court, against J. B. Tarver individually and as executor of the estate of J. C. Hudspeth, and the United States Fidelity and Guaranty Company as surety on his bond as such executor; said suit being for breaches of said bond, and for an equitable accounting. He alleged: J. C. Hudspeth died intestate on July 29, 1914, leaving as his next of kin and sole heirs at law Martha J. Hudspeth, his widow, Martha E. Crozier, a married daughter, and Julius E. Hudspeth, a son. On December 13, 1911, he executed his last will in which he named the above usees as beneficiaries, and J. B. Tarver as sole executor of his will. He left an

estate of the value of $100,000 or other large sum. Said will was probated at the August term, 1914, of the court of ordinary of Early county, in common form; and on August 3, 1914, during said term, said court passed an order probating said will and admitting it to record. On the same day said Tarver qualified as executor, and letters testamentary were issued to him. He entered upon the discharge of his duties, and took possession of all of the estate. On April 27, 1915, Tarver as executor gave bond payable to the ordinary of the county and his successors in office, in the sum of $20,000, conditioned for the faithful discharge by him of the said trust. The United States Fidelity and Guaranty Company is the surety on said bond. This bond was duly approved and recorded by the ordinary, on June 17, 1915. Tarver has wholly failed to properly perform the duties of the office of executor, and to comply with the terms and conditions of the bond, to the hurt of the usees in this action. The testator died seized and possessed of a house and lot in the city of Blakely, of his river plantation containing 1046 acres, of his Cole plantation containing 1028 acres, and his Bailey plantation containing 294 acres. Immediately upon his appointment as executor Tarver took actual and exclusive control of said farming lands, on which there were growing crops which had been cultivated by the testator, and completed said farming operations during the remainder of the year 1914, and harvested and sold said crops, of the value of at least $10,000, for which he has never accounted. He has never surrendered to the beneficiaries of the will possession or control of any of said real estate, and has never accounted to them for any of the rents, issues, and profits realized by him as such executor from said lands, of the yearly value of $10,000. He unlawfully continued farming operations on said lands in the year 1915, and in so doing misappropriated trust funds in his hands as executor, aggregating $10,000, for which he has never accounted to petitioner nor to said beneficiaries, notwithstanding the devastavit. Testator died possessed of notes and mortgages of the value of $22,751.80, open accounts of the value of $4,265, cash on deposit in the Farmers State Bank amounting to $3,997.83, thirty shares of the capital stock of said bank of the face value of $3,000, eight mules of the value of $150 each, and one horse of the value of $125. During the years 1914 and 1915 the executor collected the

full amount due on said accounts, and the sum of $3,633.63 on said notes and mortgages, for the amount of which he has never accounted to petitioner or to said beneficiaries. On December 4, 1914, the executor sold cotton of said estate, for the amount of $5001.04, and on June 17, 1915, he sold other cotton of said estate for the sum of $1909.50; but he has never accounted for any of the proceeds of said cotton.

In paragraph 16 of the petition it is alleged that Tarver as executor did not, at the July term, 1915, of the court of ordinary, or at any time prior thereto, as required by law, make any returns to that court of his receipts and expenditures in behalf of said estate during the preceding year, and did not render any account of his acts and doings as such executor, although he was not relieved of this legal duty by the will. In paragraph 17 it is alleged that Tarver, on August 2, 1915, appropriated to his own use, out of the cash in his hands belonging to said estate, the sum of $1111.60, which he wrongfully claimed as commissions, which he had forfeited by failing to make his annual returns to the court of ordinary at the July term, 1915; the ordinary having never, for cause shown, by special order relieved said executor from said forfeiture. In paragraph 18 it is alleged that said devastavit is a breach of his bond, for which he and said surety are liable, he never having subsequently come to any accounting with petitioner or with said beneficiaries for said sum of $1111.60 or any part thereof. On August 2, 1915, Tarver also appropriated to his own use, out of funds of said estate in his hands, the sum of $1200, upon the unfounded and illegal claim that he was entitled thereto for " salary and expenses," while acting as executor. He had not incurred expenses by being required to travel out of his county in order to attend to his duties as executor, or other expenses for which he could legally claim the right to be reimbursed. The court of ordinary had not allowed him any amount for expenses incurred as executor. At the time of his appointment the crops of 1914 were laid by, and the services performed in superintending the harvesting and marketing of said crops were inconsiderable. He has never made application to said court for compensation therefor, and has forfeited all claim to any extra compensation, by reason of his wrongful and unlawful conduct by breach of trust as such executor, as herein set forth. Testator died leaving unpaid

debts not exceeding $500, including expenses of his last illness and burial. The surety on said bond has never come to any accounting with petitioner or with said beneficiaries, for any devastavit committed by the executor, for his failure to come to a full and just accounting with said beneficiaries, or for any other breach of said bond. Petitioner prayed, that Tarver be required to come to a full, true, and just accounting, for the use of said beneficiaries, of all assets belonging to said estate and coming into his hands; that the surety on the bond be held liable for every devastavit committed by the executor; that petitioner have judgment against the principal and surety, jointly and severally, for such damages as have accrued by reason of their breach of the bond in failing to account with the beneficiaries named in the will, for their respective interests in said estate; and that such other and further relief be granted as may appear just and proper.

Tarver demurred to the petition, on the grounds: (1) that the same sets forth no cause of action; (2) that the facts alleged therein show no right of C. C. Lane to bring said suit for the benefit of said usees; (3) that Martha E. Crozier and Julius E. Hudspeth, being remaindermen, have no interest in the proceeds of the income from said property, and their names should be stricken; (4) that it appears from the allegations of the 16th, 17th, and 18th paragraphs of the petition that the testator died on July 29, 1914, and defendant was under no duty to make any return of his acts and doings within a year from said date; and accordingly he was in no default by failing to make said return to the July term of the court of ordinary, and did not forfeit any commissions for that reason; (5) specially to paragraph 16, because it was not alleged therein or elsewhere in the petition that this defendant did not make any return, or, if any, on what date the same was made; (6) specially to paragraph 18, because the same is a bare conclusion of the pleader, unsupported by any facts. The court sustained the fourth and fifth grounds of the demurrer and struck the 16th, 17th, and 18th paragraphs of the petition; to which ruling the plaintiff filed his exceptions pendente lite, and assigned error thereon.

In his will the testator bequeathed and devised all his property to his wife, Martha J. Hudspeth, for her natural life, with remainder to his children, Martha E. Crozier and Julius E. Hudspeth, share and share alike. J. B. Tarver was appointed sole

executor of the will. The court referred the cause to Judge J. R. Pottle, as auditor, The auditor filed his report, to which the plaintiff filed exceptions. Plaintiff abandoned his 1st, 2d, and 3d exceptions of law. The court overruled the 4th, 5th, 6th, and 8th exceptions of law filed by the plaintiff, and the 2d, 3d, 4th, and 5th exceptions of fact, in so far as the life-tenant was affected by the findings of the auditor in said exceptions. Proper exceptions pendente lite were taken to these rulings. Plaintiff assigns error thereon, and says that the court erred in overruling his 6th exception of fact to the auditor's report, and in holding that, so far as the rights of the life-tenant are concerned, there is no merit in plaintiff's 4th, 5th, 6th, or 8th exception of law, or in his 2d, 3d, 4th, or 5th exception of fact.

Plaintiff's 2d, 3d, and 6th exceptions of fact are as follows: (2) " Plaintiff excepts to the auditor's second finding of fact, to the effect that the plaintiff and his usees are estopped by their acts and conduct from asserting that Tarver illegally continued the farming operations on the estate, and are likewise estopped from calling him to an accounting for any moneys of the estate thus expended by him. Said finding was contrary to the evidence and without evidence to support it. The evidence on this issue is set forth in Exhibit A, hereto attached." (3) " Plaintiff further excepts to the auditor's fifth finding of fact, allowing the executor the sum of $1200 by way of extra compensation for his services in operating the farms of the estate. Plaintiff insists that said finding was not only excessive in amount, but contrary to law and to the evidence and without evidence to support it, as well as contrary to the principles of equity and good conscience, and tends to put a premium upon unlawful conduct on the part of overzealous, corrupt, or misguided and ignorant representatives of trust estates. In support of this exception plaintiff points out the following evidence, viz.: that set forth in Exhibits A, B, and C, hereto attached." (6) " Plaintiff excepts to the recommendation of the auditor that ' the costs and fees of the auditor be equally divided between the parties in this case.' Said finding is contrary to the principles of equity and justice and unsupported by the evidence as a whole, which shows (Exhibit C) that the executor was disloyal to his trust; that he either ignorantly or wilfully wasted trust funds in an illegal farming venture (Exhibit A), turned

over the valuable assets of the estate mentioned in the aforesaid receipt of Bridges, without first investigating to ascertain if Bridges had been legally appointed as administrator de bonis non and had duly qualified as such, and in other respects managed the estate with a total disregard to the law or his moral obligations as executor. Wherefore plaintiff prays that said recommendation be disregarded by this honorable court, and that all of the costs of this necessary litigation be taxed against the defendants."

The 4th, 5th and 6th exceptions of law are as follows:

" Fourth. Plaintiff excepts to the nineteenth finding of law, wherein ' the auditor holds and rules, as a matter of law, that under the undisputed evidence in this case the plaintiff is estopped to call the defendant executor to an accounting, or to obtain any judgment against him, by reason of the operations of the farms of the estate during the year 1915.' Error is assigned on said ruling, because the same is contrary to law and not warranted by the evidence on this issue, all of which evidence is set forth in full in an exhibit hereto attached and marked ' Exhibit A ' and made a part of these exceptions by way of reference. Plaintiff specifically excepts to the auditor's legal conclusion (stated in said 19th finding of law) that ' the beneficiaries under the will impliedly consented for the executor to operate the farms for the estate,' said conclusion being unwarranted by the evidence, and contrary to the decided weight of the evidence, set forth in Exhibit A. Error is also assigned on the auditor's holding, in this connection, that notwithstanding these beneficiaries all testified they were under the impression that the executor had a legal right to so operate the farms, still ' they were as much chargeable with knowledge of the law as he was ' (which is an erroneous application of the law, in such cases as the present), and that ' they knew that he was operating the farms, and that in operating them he was using the estate's money,' which conclusion could not be drawn from the evidence as matter of law, and was not supported by the evidence on any issue of fact involved. Error is further assigned on the auditor's holding that said evidence was sufficient to satisfy him, as matter of law, ' that they were willing for this to be done,' inasmuch as they ' made no complaint about it until after the defendant Tarver had surrendered the property of the estate to J. O. Bridges and this proceeding was begun.' The evidence warranted no such erroneous

conclusion, either as matter of law or as matter of fact. Plaintiff also assigns error on the auditor's conclusion of law, stated in the same connection, that 'the evidence shows that all of the expenditures for which the executor claims credit were proper and necessary outlays in connection with the farming operations, and that these farming operations were conducted by the executor in the usual and proper way.' Because, as plaintiff insists, said conclusion was contrary to the statute which forbids an executor, in the absence of express power conferred on him under the will of his testator, carrying on the latter's farming operations beyond the end of the calendar year in which he died; and because the evidence warranted no such conclusion. In addition to the evidence set forth in Exhibit A, hereto attached, plaintiff points out the following testimony showing what expenditures were made by the executor in carrying on said farming operations during the year (1915) following that in which his testator died, viz.: Testimony of the witness J. B. Tarver, reported in the auditor's brief of the oral evidence on pages 11 to 21, inclusive, and on pages 181, 182, and 183, as well as on pages 52 to 56, both inclusive. Also, annual returns of the executor to the court of ordinary, under the head of expenditures, a copy of which document is attached to the auditor's report of the documentary evidence admitted. Plaintiff further excepts to the auditor's conclusion that, as matter of law, 'the evidence shows that a profit resulted from the conduct of these farming operations, and that the beneficiaries of the estate got the benefit of this profit by having the same turned over to Mr. Bridges, who succeeded Mr. Tarver in the control and management of the farms.' Exception is taken to this conclusion, not only because it was wholly unwarranted by the evidence, but because it was contrary to law, in that (as the auditor himself holds in his 21st finding of law) J. O. Bridges was not legally appointed administrator de bonis non upon the estate; he was in no sense the representative of these beneficiaries, but is legally to be regarded as the 'agent' of Tarver in assuming charge of the assets of the estate; and none of the proceeds of this illegal farming venture were traced into the hands of either the life-tenant or of the remaindermen, nor did the defendants undertake to show that Bridges had ever come to an accounting with any one or more of these beneficiaries, or that any one of them had derived any

' profit ' or benefit whatsoever out of the farming crops of 1915 turned over to Bridges, without any authority of law, by the executor. The following evidence shows the facts and circumstances regarding the inane steps taken to have Bridges appointed as the successor of Tarver: (*a*) Petition by Tarver to the court of ordinary for leave to resign as executor, together with acknowledgment of service and other entries thereon, a certified copy of which proceedings are attached to the auditor's report as part of the documentary evidence admitted; (*b*) order passed by the ordinary in vacation, dated September 20, 1915, purporting to accept the resignation of Tarver and to appoint Bridges in his stead; (*c*) written receipt introduced in evidence, from Bridges to Tarver, dated August 3, 1915, for property of the estate turned over by the executor to Bridges; and (*d*) the testimony of C. C. Lane, the ordinary, reported on pages 3, 4, and 5 of the brief of the oral evidence filed by the auditor. Exception is also taken to the auditor's ultimate conclusion, that as matter of law, ' under the undisputed evidence in this case, the beneficiaries elected to take the profits, and that they can not complain that the executor engaged in this unlawful business venture.' Said conclusion was contrary to the evidence hereinbefore referred to as being set forth in Exhibit A, and wholly unwarranted by said evidence as even a conclusion of fact, much less a conclusion of law, there being no evidence that any one or more of these beneficiaries ever ' elected ' to ratify the illegal acts of the executor in carrying on said farming operations during the year 1915, or that they ' elected to take the profits,' or that there were in fact any profits derived by anybody ' in this unlawful business venture,' or that they have ever received any benefit whatsoever arising therefrom, or have anything more than an equitable right (which they have not elected to pursue) to ratify the executor's said illegal acts, and to call on Bridges, as an executor de son tort, for an accounting for such assets of the estate as they might be able to trace into his hands.

" Fifth. Plaintiff excepts to the auditor's ninth finding of law, overruling plaintiff's motion to exclude all evidence offered by defendants as to what it was worth to oversee the farming operations on the property of the Hudspeth estate during the year 1915, on the ground that the executor had no authority to carry on the farming operations, and for this reason would not be entitled to

any extra compensation for so doing. The evidence to which reference is here made is fully set forth in an exhibit hereto attached and marked 'Exhibit B.' Plaintiff insists that said ruling was erroneous and contrary to law, especially as, in view of the evidence incorporated in Exhibit A, there can be no lawful holding, either that any of the beneficiaries of the estate assented to or ratified the illegal conduct of the executor, or that they are for any reason estopped from calling him to an accounting for the funds thus illegally misappropriated by him.

" Sixth. Plaintiff excepts to the auditor's 24th finding of law, that the executor was entitled to extra compensation for his services in operating the farms for the estate. Said finding was contrary to law and wholly unauthorized under the evidence upon this issue set forth in Exhibit A, hereto attached. Especially was said holding erroneous, as being contrary to the principles of equity and justice, in that the executor was not faithful to his trust, but admittedly converted trust property to his own use, as shown by the evidence set forth in Exhibit C, hereto attached."

On October 6, 1921, during the October term of Early superior court, the defendants offered an amendment to their respective answers, in which they alleged that J. B. Tarver, executor, on August 1, 1915, turned over to J. C. Bridges, the authorized agent of all the beneficiaries under this will, the entire estate, or the equivalent thereof, which had come into his hands as such executor, after the payment of the just debts against said estate and the necessary expenses of administration; and the same was duly accepted by said agent, and by said beneficiaries under said will, as the property of said estate and as all the property of said estate. In this amendment it was further set up, that if it should appear that Bridges was not the agent of the remaindermen, but of the life-tenant alone under said will, and said remaindermen were not bound by the acceptance of said estate by Bridges and by the life-tenant, or by their own acts or omissions in the premises, in that event the plaintiff, for the use of the remaindermen alone, would have no right to recover in this suit any sums whatsoever against these defendants on the bond of said executor. They further set up that if the court should allow the remaindermen alone, or the petitioner for their use, to recover against these defendants on said bond, for any change of investment, or funds paid out, or expenses

incurred by said executor in the management of said estate, which said changes of investment or funds paid out or expenses incurred were authorized or approved by the life-tenant, then these defendants would be entitled to recover, and should have judgment over, against said life-tenant for any sum or sums recovered against them by said remaindermen; and they prayed, if said remaindermen, or the ordinary for their use, should recover, as aforesaid, any sum or sums against these defendants on said bond, these defendants have judgment over against said life-tenant for the same. To this amendment the plaintiff objected upon the grounds, that (1) it came too late; (2) it introduced new and distinct issues not covered by the previous pleadings; and (3) that the allegations of paragraph one of the amendment are not supported by the evidence introduced before the auditor, and are not germane to the issue before the court. The court overruled these objections, and allowed the amendment. Error is assigned on this judgment.

On October 11, 1921, the court rendered its final decree, in which it overruled the seventh exception of law and the first exception of fact filed by the plaintiff to the auditor's original report. To this judgment the plaintiff excepts and assigns error thereon. In the final decree the court further adjudicated that the plaintiff was entitled to recover, for the use only of the remaindermen, the money illegally expended by the executor in carrying on the farming operations during the year 1915, and in making betterments and repairs on the realty belonging to the estate, and allowing himself extra compensation for conducting said farming operations, and in crediting himself with commissions to which he was not legally entitled, without any interest from the date when such expenditures were made. To this portion of the decree the plaintiff excepts and assigns error thereon, upon the grounds: (*a*) Under the evidence reported by the auditor, and the law applicable thereto, plaintiff was entitled, as a matter of law, to recover against defendants for such illegal expenditures for the use of the life-tenant, especially the funds misappropriated in carrying on said farming operations, and appropriated by the executor as extra compensation. (*b*) The defendants were chargeable with the legal interest on all moneys so illegally expended and misappropriated by them on the dates respectively on which he committed the

several devastavits, or from the date when he became liable under the law to come to a complete accounting as executor to the beneficiaries under the will. ·(c) The life-tenant was not estopped from calling the executor and surety to an accounting for money illegally expended in carrying on said farming operations. (d) There was no privity of contract between the executor and life-tenant, nor any legal or equitable principle justifying the executor, or that the crops of 1915 were turned over by the executor to any one authorized to represent her as agent in such transaction. (e) There was no privity of contract between the executor and life-tenant, nor any legal or equitable principle justifying the executor, as against her, in appropriating to his own use $1200 as trust funds in his hands, as extra compensation for his illegal conduct in carrying on said farming operations.

On the final decree the court further adjudged that the defendants have judgment over against the life-tenant for the several sums for which judgment was rendered in favor of the plaintiff for the use of Martha E. Crozier and Julius E. Hudspeth; to which portion of the decree the plaintiff excepted and assigned error thereon, on the grounds: (1) that said judgment over was contrary to law, to the principles of equity and justice, and unwarranted by the evidence or the defendants' pleadings, and was rendered without giving to the life-tenant her day in court, or affording her a fair opportunity to introduce evidence or otherwise contest the defendants' claim against her, presented for the first time after all their exceptions to the auditor's report had been overruled by the court, and the case was closed save as to entering the final decree on the auditor's report; (2) that the life-tenant was not chargeable with the illegal conduct of the executor in misapplying or misappropriating trust funds; (3) that there was no evidence warranting a finding that she received, in whole or in part, the fruits of the executor's illegal farming venture, or that the crops of 1915 were turned over by him to her or her authorized agent; (4) that in no sense was the executor her agent while engaged in the illegal farming venture, nor can she be held legally bound to pay him for his services in thus violating the law; (5) that she is not legally chargeable with moneys illegally expended by the executor in making betterments or repairs on the estate; (6) that she is not under any legal, equitable, or moral duty to

compensate the executor for his time and energy expended in misappropriating trust funds, or liable to him or his surety because he may be forced by the remaindermen to account for the $1200 he unlawfully appropriated to his own use under his illegal claim for extra compensation.

In the final decree the court further adjudged that the costs and expenses of the proceeding, including the auditor's fee, be taken against the plaintiff and the defendants equally. To this judgment the plaintiff excepted and assigned the same as error, on the ground that it was contrary to law and the principles of equity and justice; the plaintiff having prevailed in establishing his claims against the defendants, and the evidence disclosing that the executor was guilty of gross misconduct in mismanaging the estate and in misappropriating trust funds.

*W. G. Park* and *Glessner & Collins,* for plaintiff.

*A. H. Gray* and *Ryals & Anderson,* for defendants.

HINES, J. (After stating the foregoing facts.)

1. The executor qualified on August 3, 1914, and immediately took possession, control, and management of the property of the estate. He did not make returns of his receipts and expenditures on or before the July term, 1915, of the court of ordinary for the interim between his qualification and said term; but applied to the payment of his commissions on such receipts and expenditures the sum of $1111.60 from the funds of the estate. In paragraphs 16, 17, and 18 of the petition the plaintiff alleged the above facts. He further alleged that the executor, by his default in making his returns by that date, forfeited his commissions on receipts and expenditures during the year preceding the first Monday in July, 1915; and that he had not been relieved of such forfeiture by a special order of the court of ordinary. He sought to recover from the executor these commissions. The defendants demurred to these paragraphs of the petition, in which the plaintiff sought to recover from the executor and his surety the money of the estate which the executor had applied to the payment of these commissions, which the plaintiff alleged the executor had forfeited. The court sustained the demurrer to these paragraphs of the petition, and struck the same. The plaintiff assigns error on this judgment.

The court seems to have put its judgment on the ground, that

the executor had one year from his qualification in which to make his return. This involves the proper construction of section 3992 of the Civil Code, which, in part, declares that " on or before the regular term of the court in July in each and every year, every administrator shall make a true and just account, upon oath, of his receipts and expenditures in behalf of the estate during the preceding year." This law is applicable to executors. Civil Code, § 3892. What year is referred to in section 3992? Year, unless from the context or otherwise a different meaning is intended, means the calendar year. Civil Code, § 5. But the year referred to in this section is, we think, the year beginning with the qualification of the executor, and ending twelve months thereafter. This clearly appears from other code sections which govern administrators and executors in the management of estates. They are required to pay the debts of the estate, wholly or in part, at the expiration of the first year from their appointment. Civil Code § 3999. They are allowed twelve months from the dates of their appointment to ascertain the condition of the estates which they are administering. § 3997. No suit for the collection of any debt of the testator can be commenced against the executor until the expiration of twelve months from his qualification. § 4015. No action on any joint obligation of the testator and another can be brought against the executor until twelve months after the probate of the will. § 5596. If a defendant die pending suit, the plaintiff may sue out a scire facias immediately after the expiration of twelve months from the probate of the will, requiring the executor to appear and answer to said action. § 5599. A legatee can, after expiration of one year from the qualification of the executor, cite him to appear before the ordinary for a settlement of his accounts. § 4073. So we think our statutes establish a fiscal year for accountings by administrators and executors, which begins with the date of their appointment; but for the purposes of this case it is unnecessary to determine whether the word *year* in the code section means the calendar year, or this fiscal year. Whether one or the other, the executor must make his returns " in each and every year." He can not miss a year. Now at what time in the year, calendar or fiscal, must he make his returns? Can he do so at any time during the year? The code fixes the period of the year when he shall make his returns. He

shall do so " on or before the regular term of the court in July."
This is plain.

But it may be said that guardians can make their returns within
twelve months after their appointment, " and by the first Monday
in July in every year thereafter" (Civil Code, § 3059) ; and that,
construing this law with section 3992, the intention is to require
an executor to make his returns at any time within twelve months.
Separate and distinct methods are provided for the making of
returns by guardians and executors. A guardian can make his
first return at any time within twelve months after his appoint-
ment. The executor must make his first return by the first Mon-
day in July of the first year after his appointment, and one in
each and every year thereafter by the same date. The ordinary
can only cite a guardian to appear and show reason for his delay
in making his returns after the expiration of twelve months from
his appointment; and the guardian only forfeits his commissions
when he fails to make his return before the end of the year. Civil
Code, § 3063. Immediately after the session of the July term of
the court of ordinary in each year, the ordinary can cite the exec-
utor to show cause for his neglect. Civil Code, § 3996. *Byne* v.
*Anderson,* 67 *Ga.* 466 (2), 473. The executor failing to make
annual returns, as required by section 3992, forfeits all com-
missions for transactions during the year within which no return
is made, " unless the ordinary, upon cause shown, shall, by special
order on the minutes," relieve him from such forfeiture. Civil
Code, § 4069. We conclude that the construction of section 3992
of the Civil Code is not affected by section 3059; and that an exec-
utor must make his first return of receipts and expenditures by the
first Monday in July, although he may have qualified within less
than a year prior to that date.

Frequent settlements make fast friends, and prompt returns by
executors conduce to the faithful administration of the estates com-
mitted to their charge. When an executor fails to make his annual
returns, as required by section 3992, he forfeits all commissions for
transactions during the year within which no return is made.
Civil Code, § 4069. A special order on the minutes is necessary
to relieve him from such forfeiture. *Doster* v. *Arnold,* 60 *Ga.*
316; *McBride* v. *Hunter,* 64 *Ga.* 655. Formerly, a failure to make
returns forfeited all commissions. Cobb's Dig. 306; *Adair* v. *St.*

*Amand,* 136 *Ga.* 1, 8 (70 S. E. 578). Returns are now to be made by the first Monday in January of each year. Ga. Laws 1920, p. 79.

The court therefore erred in striking those paragraphs of the petition in this case which sought to have the executor account for moneys of the estate which he retained for commissions which had been forfeited.

2. The court overruled the plaintiff's sixth exception of fact to the auditor's report. The court also overruled the plaintiff's fourth, fifth, sixth, and eighth exceptions of law, and his second, third, fourth, and fifth exceptions of fact, in so far as the life tenant was affected by the findings of the auditor in said exceptions complained of; but sustained all of said exceptions so far as the rights of the remaindermen are concerned. The court overruled the plaintiff's seventh exception of law and his first exception of fact. To this judgment the plaintiff excepted and assigns error thereon. We will deal first with the plaintiff's sixth exception of fact. In this exception the plaintiff complains of the recommendation of the auditor that " the costs and fees of the auditor be equally divided between the parties in this case." The court adopted this suggestion of the auditor, and in the final decree adjudged that the costs and expenses of the proceeding, including the auditor's fee, be taxed equally, one half against the plaintiff and one half against the defendants. To this judgment of the court overruling the sixth exception of fact, and to this portion of said decree, the plaintiff excepts and assigns error thereon, on the ground that it is contrary to law and the principles of equity and justice, in that the plaintiff had prevailed in establishing his claim against the defendants, and the evidence disclosed that the executor was guilty of gross misconduct in managing the estate and in misappropriating trust funds. Did the court abuse his discretion in apportioning the costs between the plaintiff and the defendants? This was an equitable proceeding; and it fell within the province of the judge to determine upon whom the costs should fall. Civil Code, § 5423. Under this power the judge can decide upon whom the payment of the fees of an auditor shall fall, or how the payment of such fee shall be apportioned between the parties litigant. *Fitzpatrick* v. *McGregor,* 133 *Ga.* 332, 344 (65 S. E. 859, 25 L. R. A. (N. S.) 50). It is

true that the judge should exercise a sound discretion in deciding by whom the costs should be paid. He has no arbitrary power in this matter. *Hamilton* v. *DuPre,* 103 *Ga.* 795 (30 S. E. 248). The last-cited case is, so far as we have found, the only one in which the judgment of the lower court has ever been reversed for abuse of discretion in determining upon whom the payment of the costs should fall. *Lowe* v. *Byrd,* 148 *Ga.* 388 (96 S. E. 1001). We can not say that the judge abused his discretion in this matter in this case. The plaintiff undertook to require the administrator to come "to a full, true, and just accounting . . for all the assets, real and personal, belonging to the estate . . and coming into the hands or under the control of said Tarver, as executor of said estate." The plaintiff did not secure such an accounting, and under the facts of the case was not entitled to such a comprehensive accounting. Yet the defendants had to fight the case as laid by the plaintiff in his pleadings. As the plaintiff recovered much less than he sought to recover from the defendants, we can not say that the trial judge abused his discretion in awarding costs and expenses against the plaintiff and the defendants.

In his first exception of fact the plaintiff excepts to the auditor's finding "that J. O. Bridges was authorized to receive from the defendant, Tarver, for and in behalf of the beneficiaries of J. C. Hudspeth, the property of the estate which was turned over to Bridges by Tarver, and that under the evidence in this case the said beneficiaries and the plaintiff in this case are estopped to claim that the delivery of this property by Tarver to Bridges amounted to a devastavit; and alleges that said finding was contrary to the evidence, and without evidence to support it." The plaintiff's seventh exception of law asserts that the auditor erred in finding that "as a matter of law, . . under the undisputed evidence in this case, the turning over by the defendant Tarver to J. O. Bridges of all the property of the estate in his hands after the purported appointment of Bridges as administrator de bonis non was not a devastavit." The plaintiff claims that said ruling was contrary to law and was unwarranted by the evidence. So we will deal with this exception of fact and this exception of law together, as both relate to the same subject-matter. Are both of these findings without evidence to support them? J. B. Tarver

was the qualified executor of the estate of J. C. Hudspeth. J. B. Tarver filed in the court of ordinary his petition in which he recited his appointment and qualification as executor of the will of said Hudspeth on August 3, 1914, that he had not fully administered said estate, and that he desired to resign said trust, because he did not have sufficient time to devote to the discharge of his duties as such. He named J. O. Bridges as a suitable person qualified and willing to accept this trust. Attached to this petition was a writing signed by Mrs. J. C. Hudspeth, Mrs. J. H. Crozier, and Julius E. Hudspeth, as sole heirs of the estate of J. C. Hudspeth, in which they waived notice of the resignation of Tarver as executor of said estate, and agreed and requested the ordinary to appoint J. O. Bridges to succeed J. B. Tarver as executor of said estate. Attached to said petition was Bridges' written acceptance of the appointment of executor of the estate of J. C. Hudspeth, " in compliance with the request of the above-mentioned parties." On September 20, 1915, the ordinary passed an order, purporting to have been passed during the August term, 1915, of the court of ordinary of Early county, in which the resignation of Tarver was allowed as prayed, and Bridges was appointed to succeed him.

There is evidence in the record tending to show, and authorizing the auditor to find, that the legatees had become greatly dissatisfied with Tarver's management of the estate, and wished him removed; that all the legatees, who were sui juris, had selected Bridges to act as executor; that they had employed an attorney to secure Tarver's removal and Bridges' appointment as administrator; that Tarver's resignation was forced; that the reason for his resignation, stated in his petition to resign, was not the true reason moving him to that course, that previously to the passing of the order allowing his resignation, and appointing Bridges as administrator, the former as executor had turned over to the latter lands and personal property of said estate amounting to $80,920.06, for which Bridges gave his individual receipt, not as executor, said receipt being dated August 3, 1915, and having been filed in the office of the ordinary on September 20, 1915, the date of said order; that all this was done in pursuance of the plan and arrangement of said legatees to get rid of Tarver, and have Bridges appointed administrator in his place; and that when said order was passed both

Tarver and said legatees believed that said order was valid, the whole transaction having been conducted by the attorney employed to represent the legatees in this matter. All parties now concede that this order was null and void.

The plaintiff claims that when Tarver as executor turned over the property of this estate to Bridges under this void appointment, which Tarver as a matter of law was bound to know, this constituted a devastavit for which Tarver as executor and the surety on his bond are liable. The plaintiff insists that Tarver is liable for all the acts of Bridges in assuming to exercise the authority of executor, his true relation to Tarver being that of a mere agent acting under his guidance in administering the estate. Counsel for plaintiff rely on the case of *Rusk* v. *Hill,* 117 *Ga.* 722 (45 S. E. 42). In that case the administrator, without consulting the heirs of his intestate, allowed one not an heir to participate with them in the distribution of the assets of the estate, which, this court court held, he did at his peril; and that the lawful heirs were not estopped from subsequently calling upon him for an accounting, notwithstanding they may have known of such misapplication of trust funds and raised no objection thereto, if at the time they ignorantly supposed he was properly administering the estate, and in no way misled the administrator into the belief that he was acting with their approval and consent. The principle announced in that case is widely different from the law applicable to the facts of the case at bar. All the legatees of this estate were of age. They were anxious to have the executor removed. They selected his successor. They employed an attorney to take steps to remove the executor and to have appointed in his stead the person of their choice. They wished to get the estate out of the hands of the executor named in the will, and to get it into the hands of the person whom they sought to have appointed in the place of the duly qualified executor. The whole transaction by which the executor was removed, and the person of their choice appointed in his place, was done under the guidance and direction of the attorney of the legatees. When the order was granted by the court of ordinary removing the executor and appointing Bridges in his place, both the executor and the legatees supposed that the same was valid, and that the executor was properly removed, and that Bridges was properly appointed executor of the estate in his stead. If the

executor, on his own motion, had moved in this matter, without the consent and participation of the legatees therein, the princple ruled in *Rusk* v. *Hill,* supra, would apply.

The legatees under a will, when the interests of minors and creditors are not involved, can distribute the same by consent, when and how they please. *Amis* v. *Cameron, 55 Ga.* 449. Legatees under a will, when all of them are of age, can divide the estate among themselves, although the will directs that it shall be divided by commissioners appointed by the ordinary. *Hatcher* v. *Cade, 55 Ga.* 359. This court has said: "If a testator can give legal directions as to the management of his estate after his death, there seems to be no reason why the legal and equitable owners of an estate after an intestate's death, who are sui juris, can not do the same thing by directing the operation of the business after all the debts of the estate are paid, to the extent of their own interest." *Daniel* v. *Bank,* 147 *Ga.* 695, 698 (95 S. E. 255).

So, if the executor is willing to resign, and, at the request of the legatees, does offer to resign, so that a person of their choice can be appointed in his stead as executor, and in pursuance of an agreement between him and the legatees he files in the court of ordinary a petition praying for an order allowing him to resign, and asking the appointment of the person chosen by the legatees as his successor in the trust, which order is granted with the knowledge, consent, and approval of the legatees, both supposing such order valid, and under an arrangement between the executor and the legatees by which the excutor had previously turned over the estate to the person so chosen as his successor, the latter, when it develops that said order is void, will be treated as the agent of the legatees rather than that of the executor; and the executor and his surety will not be held for a devastavit by reason of having turned over the estate to such person so sought to be appointed the successor of the executor in the trust under said void order. The person so appointed executor, although the appointment is void, will be deemed and treated as the agent of the legatees; and his possession of the estate, so acquired, will be deemed that of the legatees. So we are of the opinion that the court did not err in overruling the plaintiff's first exception of fact and his seventh exception of law.

The plaintiff, in his fourth exception of law and second ex-

ception of fact to the auditor's report, excepts to the auditor's finding that the plaintiff and the usees were estopped by their acts and conduct in calling the executor to an accounting for moneys of the estate expended in conducting the farming operations for the year 1915. The court sustained these exceptions so far as the remaindermen were concerned; and with this part of his ruling we do not deal. Were the plaintiff and the life-tenant estopped from calling the executor to account for moneys of the estate expended by him in conducting these farming operations during 1915? Counsel for plaintiff contend that the attempted substitution of Bridges as executor in the place of Tarver was a nullity, which Tarver was bound as a matter of law to know; and that the turning over by Tarver as executor to Bridges of the property of the estate was a palpable devastavit. This contention would be correct if the legatees had not participated in the selection and appointment of Bridges as successor to Tarver. *Rusk* v. *Hill,* supra. We have already dealt fully with the question of Bridges' relation to the legatees under his void appointment as successor to Tarver in this executorship; and we have held him to be, under the facts and circumstances of this case, their agent in receiving from the executor the property of this estate, and in his subsequent management thereof. Counsel for the life-tenant contend that Tarver was bound to know that the substitution of Bridges as executor was illegal and void, and that to turn over to him the property of the estate under such circumstances amounted to a devastavit. They rely in this contention upon certain authorities to which we will now refer.

In making distribution of an estate, an administrator gave one share to the mother and to her children, under a mistake of law, the fact being that it belonged to the mother alone, who consented, under the same mistake of law, to said distribution, but did nothing to mislead the administrator, who was not at all influenced in his action by her consent. It was held that the mother was not estopped by her acts in claiming of the administrator her full rights as an heir at law. *Davis* v. *Bagley,* 40 *Ga.* 181 (2 Am. R. 570); Id. 45 *Ga.* 108. There is a wide difference between that case and the case at bar. In this case what the executor did was at the urgent solicitation of the legatees. He resigned under pressure. What he did in attempting to resign his trust, and in turning

over the property of the estate to his proposed successor, was all done certainly at the request of the life-tenant, and under the guidance and direction of her attorney at law, who was employed to secure the resignation of the executor and the substitution of Bridges in his place. The crops grown on the farms during 1915 were turned over by the executor to Bridges at her instance and request. The resemblance between the case in 40 *Ga.* and this case consists in the fact that in both cases the parties acted under a mistake of law; but in the former case the heir at law got nothing by the mistake, and by the payment by the administrator of a part of her distributive share to her children. In the case at bar the life-tenant succeeded in getting from the executor the property of the estate with crops of 1915, and in placing them in the hands of her chosen manager thereof.

A testator by his will, probated in 1856, gave directly to his daughter, then a child, the residue of his estate. She married in November, 1866, and in 1868 her husband settled with the executor and received and receipted for her legacy, acting for himself, and not as the agent or the trustee of his wife, This court held that the wife was not bound by his receipt. *Windsor* v. *Bell,* 61 *Ga.* 671. That case and the case at bar are wide apart. There the wife did nothing to mislead the executor. The payment to the husband of her legacy was not done with her knowledge or consent. There was no decisive evidence of ratification by the wife; and it was held that she could not ratify, so far as her legacy went to pay her husband's debts. What was done in the case at bar was all done with the consent of the life-tenant and at her request.

The case at bar is more like *Rabun* v. *Rabun,* 61 *Ga.* 647, where it was held that "If a legatee of full age, through ignorance or mistake of his legal rights, consents to be excluded from sharing in a fund about to be distributed by the executrix, his mother, and the distribution is made accordingly, the executrix will be free from any liability to him for money thus, with his express consent, innocently paid to other parties."

It is true that where an executor operates the farms of his testator after the current year, any loss thereby sustained would not fall upon the estate, and should not be allowed the executor. *Poullain* v. *Brown,* 82 *Ga.* 412 (2) (9 S. E. 1131); *Johnson* v.

*Parnell,* 60 Ga. 661. But the auditor found, and his finding is supported by the evidence, that the farming operations of 1915 were not at a loss. The value of the crops produced exceeded the cost of production; and these crops were all turned over · by the executor to Bridges as his successor. As we have held that Bridges was the agent of the life-tenant in receiving these crops and in disposing of them, as their value exceeded the cost of making them, the ex-executor should not be held to account for the moneys of the estate expended in conducting the farm. Even if the use of the money of the estate in these farming operations constituted a devastavit for which the executor was liable, yet if the life-tenant was not injured thereby she would not be entitled to call him to account and have judgment against him for moneys of the estate so expended. *Gwinn* v. *Trotter,* 112 *Ga.* 703, 705 (38. S. E. 49).

It is immaterial, in view of the conclusion which we have reached as to Bridges' relation to the legatees, what became of these farm products after they went into the hands of Bridges. So we do not think that the auditor erred in his findings of law and fact in reference to this matter; and the court below did not err in overruling these exceptions so far as the life-tenant was concerned.

In his fifth exception of law to the auditor's report the plaintiff excepts to the overruling of his motion to exclude all evidence, offered by the defendants, as to what it was worth to oversee the farming operations on the farms of the estate during the year 1915, on the ground that the executor had no authority to carry on these operations, and for this reason would not be entitled to any extra compensation for so doing. In the sixth exception of law the plaintiff excepts to the auditor's finding that the executor was entitled to extra compensation " for his services in operating the farms of the estate." The objection to this finding is that it is contrary to law and wholly unauthorized under the evidence. In his third exception of fact to the auditor's report the plaintiff excepts to the auditor's finding allowing the executor the sum of $1200 by way of extra compensation for his services in operating the farms of the estate. Plaintiff insists that said finding is not only excessive in amount, but contrary to law and without evidence to support it. We will deal with these exceptions together. The court overruled these exceptions so far as the life-tenant was

affected by the findings of the auditor in said exceptions complained of, and the plaintiff assigns error on this ruling.

An executor can only continue the business of his intestate until the expiration of the current year. Civil Code, § 4012. The life-tenant, being sui juris, as we have undertaken to show, could authorize the executor to manage the estate, so far as her interest therein was concerned, in any manner that she might see fit. If she did not originally authorize him to conduct the farming business during 1915, she could have ratified his unauthorized act in so doing. If, after the executor had pitched and cultivated the crops on the farms in 1915 until they were practically matured, she procured him to resign and to turn over these crops to Bridges to be disposed of by him, the latter being her agent, as we have undertaken to show, there would have been a ratification on her part of the act of the executor in operating these farms during 1915. This being so, the executor would be entitled to extra compensation for these services, the same not falling within his ordinary duties as executor. When the plaintiff for the use of the legatees filed this equitable proceeding calling him to account, he could set up his claim for this extra compensation, although the same had not been allowed by the court of ordinary. *Adair* v. *St. Amand,* 136 *Ga.* 1 (6), supra. There being evidence to sustain the auditor's finding of fact and his findings of law in this matter, the court did not err in overruling these exceptions so far as the life-tenant was concerned.

But exception is taken by the plaintiff to that part of the decree of the court finding that he was entitled to recover, for the use only of the remaindermen, $4979.57 illegally expended by the executor in the farming operations, $352.76 expended in making betterments and repairs on the lands of the estate, the sum of $1200 reserved by the executor for extra compensation for conducting these farming operations, and $262.08 illegally reserved by the executor as commissions on moneys invested in bank stock and expended by him in said farming operations. The error assigned is that these recoveries should be for the life-tenant as well as the remaindermen. All of these sums constituted portions of the corpus of the estate. To the corpus of the estate the life-tenant has no title or claim. She would only be entitled to the rents, issues, and profits thereof. So she would not be entitled to a judg-

ment in her behalf for any portion of these crops. She would be entitled to have the same invested, and to the income therefrom. For this reason the court properly rendered judgment for such portions of the corpus of this estate in favor of the remaindermen alone.

4. In the final decree the court further adjudged that the defendants have judgment over against said life-tenant for certain of the several sums of money for which judgment was so rendered in favor of the plaintiff for the use of the remaindermen. These sums consisted of the above sum of $4979.57 expended by the executor in carrying on the farm operations, the sum of $352.64 expended in making betterments and repairs upon the real estate, and the sum of $1200 reserved by the executor as extra compensation for conducting said farming operations. The plaintiff excepted to this portion of the decree, and assigns error thereon on the grounds that it is contrary to law, to the principles of equity and justice, was unwarranted by the evidence or the pleadings, and was rendered without giving to the life-tenant her day in court. It is earnestly insisted that the life-tenant is not chargeable with these sums of money so expended. If they were used with her express authority, then she would be clearly liable for them, the same constituting a part of the corpus of the estate in which she only had a life-interest. If they were used by the executor, without her authority, in conducting said farming operations, in making betterments and repairs upon the real estate, and as compensation for his services in managing the farms of said estate in which she had a life-interest, and she afterwards ratified his acts and doings in these matters, she would likewise become liable to restore the corpus of the estate thus used and expended for her use and benefit. The life-tenant alone was entitled to the profits made in these farming operations. She alone would be liable for any extra compensation to which the executor would be entitled for services in managing these farms for the year 1915. She alone would be liable for the repairs and betterments put upon the real estate. Having either originally authorized these expenditures of the money of the estate, or, if they were made without her authority, having afterwards ratified them, she thus became liable to account therefor. So when judgment was rendered for these expenditures against the executor and surety,

the latter was subrogated to the rights of the remaindermen against the life-tenant; and the court did right in rendering judgment over in favor of the defendants against the life-tenant.

5. On October 6, 1921, the defendants offered an amendment to their answers, in which they alleged that on or about August 1, 1915, the executor had turned over to Bridges, as the authorized agent of all the beneficiaries, the entire estate which had come into his hands as such executor, after paying the debts of the testator, and the expenses of administration, and that the same was duly accepted by said agent and beneficiaries as the property of said estate. In this amendment the defendants further alleged, that if the court should allow the plaintiff to recover for the use of the remaindermen, for any funds paid out, or for expenses incurred by the executor in managing said estate, and that the same were incurred, directed, or authorized by the life-tenant, then the defendants would be entitled to recover and should have judgment over against the life-tenant for any sum or sums recovered against them by said remaindermen; and they prayed that if the plaintiff should recover for the use of remaindermen any sums against these defendants, the latter have judgment over against the life-tenant therefor. The plaintiff objected to the allowance of said amendment, on the grounds that it came too late, that it introduced new and distinct issues not covered by the pleadings previously filed, that it was not supported by the evidence introduced before the auditor, was not germane to any issue before the court for determination; and on certain special grounds which need not be mentioned.

Generally, pleadings are amendable at any stage of the cause. Civil Code, § 5681. It is too late, after the court has approved the auditor's report, for the defendant to file, by way of amendment, new and independent defenses to the plaintiff's action; but it is always permissible to amend pleadings, even after the auditor's report has been approved by the court, so that the same will support a decree administering the proper equitable relief to all the parties upon the facts reported by the auditor. *Milner* v. *Mutual Benefit Building Association,* 104 *Ga.* 101 (3, 4) (30 S. E. 648). This was the purpose of the amendment which was allowed; and this is always permissible. The pleadings can always be adjusted by amendment to the facts as found by the auditor, or proved be-

fore the jury.· If the plaintiff wished further time to introduce additional evidence, in view of the 'amendment, he should have applied to the court to have the case recommitted for this purpose.

A new trial is granted in this case solely on the ground that the court erred in striking that portion of the petition which sought to recover from the executor the funds which he appropriated in payment of his commissions which had been forfeited by his failure to make his return in due time; and we direct that on the next trial this issue alone be tried and determined.

*Judgment reversed in part and affirmed in part, with direction. All the Justices concur.*